Connie Jean COLE, Appellant,

v.

David Lance COLE, Respondent.

No. WD32284.

Missouri Court of Appeals,
Western District.

April 27, 1982.

Harold L. Caskey, Butler, Jeri Leigh Caskey, Alton, for appellant.

C. Carl Kimbrell, Moritz & Kimbrell, Kansas City, for respondent.

Before SOMERVILLE, C. J., and WASSERSTROM and LOWENSTEIN, JJ.

WASSERSTROM, Judge.

The trial court decree dissolved the marriage between the parties, divided the marital property between them, awarded custody of their two children to the wife and ordered the husband to pay $425 per month for their support. The wife appeals on the grounds that the trial court erred on the various grounds discussed below.

## I.

### Maintenance

■ The wife's first point on appeal is that she should have received an allowance of maintenance for a limited period. Her evidence showed that her financial need called for $1,050 per month. Prior to the divorce her only earnings came from her work at a hobby and craft shop which produced approximately $26 per week and from very occasional sales of her paintings. At the time of hearing before the trial court, she had enrolled in a cosmetology school at a cost of $600 tuition, for a term of seven to nine months. She testified that during this training period she would be unable to work at any income producing job and that her costs of maintenance during that period would be $200 per month.

The testimony further showed that the husband was self-employed as a house painter. His income for 1979 came to $15,050 before taxes. His income was about the same for the years 1978 and 1980. The husband is subject to substantial indebtednesses which are more fully discussed in points II and V of this opinion.

As is too frequently the case, the family income, which was adequate when the spouses lived together, becomes insufficient when they divide into two separate households. Where as here the wife is an able-bodied young woman, the commonly expected solution is for the newly divorced wife to enter the labor market in a regular job. That this will be the general rule is assumed by Section 452.335, RSMo 1978.

Here the wife is ready and able to go to work, but she cannot earn any significant amount without further training. After a relatively short period of training, the chances are reasonably good that she can take a long stride toward self-sufficiency, to the great advantage of all concerned.

Balancing all the factors, the fairest solution to the economic situation of these parties would be to have the husband provide the tuition cost of $600, plus seven months' maintenance at $200 per month, for a total amount of $2,000. This is precisely the kind of situation for which "rehabilitative maintenance" was conceived and is intended. See *Pederson v. Pederson*, 599 S.W.2d 51 (Mo.App.1980); *Royal v. Royal*, 617 S.W.2d 615 (Mo.App.1981). The decree entered by the trial court will therefore be modified to make such provision.

## II.

### Division of Marital Property

■ A. *Percentage Allocations.* The wife complains that the allocation of marital property, which she computes as 65% to the husband and only 35% to her, is unfairly disproportionate. This argument fails because of her errors in calculation.

The largest item of marital property consisted of the home which at the time of trial had already been sold and the net proceeds of approximately $26,000 had been deposited in escrow. The court ordered that the escrow fund, less certain debts, be divided equally. This would result in a distribution of $5,832 to each.

Additionally, the husband was to receive two boats, an outboard motor, two vehicles, painting equipment, power tools, a television and a lawnmower. The wife valued those items at $12,200, while the husband valued them at $11,000. The husband therefore would receive a total distribution worth $18,032 according to the wife, and $16,832 according to him.

In addition to the escrow distribution, the decree ordered distribution to the wife of household furniture, furnishings and appliances which were worth according to her

$2,580, and according to the husband $2,925. Thus the wife would receive $8,412 total according to her, and $8,757 according to the husband.

However a comparison of the foregoing items cannot be deemed complete without taking into account creditor liens which existed against the items distributed to the husband. Those liens totaled $9,200,[1] which the decree obligated him to pay. This brings his net distribution down to $7,632 (taking his valuations) or to $8,832 (taking the wife's valuations). Whichever set of valuations is accepted, the net distribution to the husband is only roughly equal to that received by the wife.

█ The wife also calls attention to the fact that she has no separate property of her own, whereas the husband is a joint owner with his mother on the mother's residence, has a joint tenancy with his mother in two certificates of deposit for $1,000 each and a joint tenancy with his grandmother in two United States savings bonds aggregating $600. However the evidence shows that none of the husband's own funds ever went into these joint tenancies, and it is quite apparent that these joint titles were created by the mother and grandmother solely as estate planning devices. These tenancies represent nothing more than inheritance expectancies which may or may not ever come to fruition. They should play little or no part in the matter of considering fairness of the division of marital property between the spouses.

█ B. *Deduction of Indebtedness to the Mother.* The decree provides that the escrowed proceeds from the home sale shall be reduced by the amount of certain debts before division of the balance to the parties. Among those debts is an item of $10,300 to be paid to the husband's mother. The wife argues that recognition of that sum as an indebtedness constituted error.

The evidence showed that the mother lent the spouses $5,300 on May 5, 1973, for the purpose of buying a trailer in which the couple were to live. The mother took back a note signed by the husband, reading in part as follows: "To be paid back by any monthly payments possible and full amount (plus interest lost) to be paid by Sept. 1974. The trailer must be insured for full amount at least." Later the young couple needed more room. They sold the trailer, and with the proceeds together with an additional $5,000 loan from the mother they purchased a house. Other smaller loans were made from time to time by the mother, and occasional repayments were made sporadically by the husband. Although the wife argues that "it appears that Respondent [husband] will never actually be forced by his mother to pay back any of the money borrowed from her," the testimony by both the husband and his mother was to the effect that the mother did always expect repayment and that she indulged extensions of repayment simply because of the financial situation and needs of the young couple.

Whether or not the $10,300 item was a true and bona fide loan from the mother with continued expectation of repayment was purely a question of fact, depending for the most part on the credibility of the witnesses. The finding of the trial court in favor of the loan should not be disturbed under the controlling guidance of *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *Anderson v. Anderson*, 584 S.W.2d 613 (Mo. App.1979), relied on by the wife, gives no support to her position because of the radical factual differences of that case.

### III.

#### Attorneys' Fees

The wife complains that the trial court did not make an allowance for her attorneys' fees. *Kieffer v. Kieffer*, 590 S.W.2d 915 (Mo. banc 1979), declares the controlling principle that the allowance of attorneys' fees depends upon all the relevant factors

---

1. The husband's brief states that Exhibit 2 shows the $9,200 lien total, but that exhibit has not been included in the record on appeal. However, the oral testimony shows a $6,900 loan against the Blazer vehicle and a $2,300 lien against his paint truck and other equipment.

and that in this regard the trial court has considerable discretion. A review of all the factors in this case shows no reason to disturb the exercise of discretion by the trial court here. *Murphy v. Carron, supra.*

## IV.

### Permitting Proof of Debts

■ The wife complains that the husband should not have been permitted to make proof of debts due and owing. She rests that contention upon the fact that she submitted interrogatories to the husband which included questions with respect to outstanding debts, and that those interrogatories were never answered by the husband. The wife argues that because of that default, the trial court should have imposed the sanction of not permitting introduction of evidence by the husband in that regard.

Whether or not to impose sanctions, and if so, the extent of the sanction, lay within the sound discretion of the trial court. Rule 61.01(b); *Claude T. v. Claire T.*, 579 S.W.2d 141 (Mo.App.1979); *Aulgur v. Zylich*, 390 S.W.2d 553 (Mo.App.1965). One factor justifying the trial court in not imposing a sanction was that the wife had tendered no pretrial motion to require compliance with the interrogatories submitted. Another factor is that the matter of these debts was within the general knowledge of the wife, regardless of answers to interrogatories. The testimony at trial disclosed her knowledge as to the loans made by the husband's mother and also with respect to obligations for general purchases. Still further, when the husband introduced his evidence as to these debts, the wife did not ask for any continuance and gave no indication that an opportunity on her part to check with respect to the debts would be productive or of any value to her. We find no reason to interfere with the trial court's declination to impose the sanction suggested.

## V.

### Backdating the Decree

■ The evidence in this case was heard on July 22, 1980. At the close of the evidence the court dictated into the record the provisions which would be incorporated into the decree, including one to the effect that out of the $26,000 escrow fund, the "marital debts" should be deducted and paid; and the court stated that the wife's attorney should prepare the decree. The husband had presented as part of his case Exhibit 2 which purported to be a compilation of marital debts to J. C. Penney, Montgomery Ward, Sears Roebuck, Town and Country Charge (sometimes referred to in the record as "Mastercharge"), and Blue Valley Federal Savings and Loan Association. That exhibit has not been made part of the record on appeal. Following the close of the evidence, there was a conference between the court and counsel, but unfortunately that conference was held off the record and therefore no transcript of what transpired appears in the record on appeal.

Nevertheless, based on the motion for new trial, the transcript of the proceedings on the motion for new trial and the briefs in this court, it can be discerned that the parties agreed in the off the record conference that the husband's attorney should obtain statements from the creditors substantiating the listing in Exhibit 2, that the husband's attorney should then furnish those statements to the wife's attorney for verification and that the wife's attorney would then prepare a formal decree for signature by the court.

On September 29, 1980, a further hearing was had before the court on the wife's motion for new trial. At that time the husband presented the statements from creditors substantiating the listing in Exhibit 2, but the wife objected to any consideration thereof based in part on the length of time it had taken the husband to present the statements, but primarily on the ground that the statements were hearsay and "ex parte." The wife's complaint seems to be mostly that she was unable to tell from the statements just when the various items of indebtedness were incurred and for what purpose. Answering that objection, the husband's attorney stated at the September hearing:

"[W]e did obtain from all of the various charge accounts copies of all of their records: J. C. Penney; Montgomery Wards; Sears, Roebuck; Blue Valley Savings and Loan, that indicate charges and payments made and all of those things indicates no charges made after the parties separated. Now as to what was purchased prior to their separation, I don't know that anybody could tell you that. J. C. Penney couldn't tell you. The parties themselves couldn't tell you. How you could find that out, I don't know. We have provided a copy of this to Mr. Caskey and we would be willing to allow the Court to review this and mark it as evidence if necessary. But it does show that no charges were really made after the parties were separated. That exception being clothes for the children, which both parties said the clothes were done. Those are joint debts...."

No validity can be perceived in the objection by the wife to the statements submitted subsequent to trial. The obtaining and submission of those statements were quite apparently in an effort to more fully satisfy the wife and her attorney as to the composition of the debts shown on Exhibit 2. As it turned out, the various creditors could not give all the detail that the wife would have liked and upon which she still tries to insist. Nevertheless, Exhibit 2 was in itself competent evidence and could well have been accepted as the sole basis for determining marital indebtedness. Quite obviously the trial court was satisfied by Exhibit 2 as supplemented by the later statements from creditors, and no good reason has been given by the wife why this documentation, which is the best that could be obtained, should not be deemed sufficient.

■ The wife also objects that the final decree was not composed and entered of record until September of 1980, but that judgment entry was then backdated to July 22, 1980. Strictly speaking the wife is correct, since the decree was not a final one, nor intended to be, until the formal judgment entry was prepared and signed by the judge. The parties had agreed with the judge to this at the off the record conference in July 1980. Thus, there was no necessity or reason for backdating the decree. On the other hand, the backdating did no harm to anyone. The wife does not explain in what way she claims to have been prejudiced, and we can see none.

The decree is modified by providing rehabilitative maintenance to the wife in the sum of $2,000. The decree as so modified, is affirmed.

All concur.