**In re the Marriage of Sharon Kay BRISCO, Appellant,**

v.

**Thomas Richard BRISCO, Respondent.**

**No. WD 37435.**

Missouri Court of Appeals, Western District.

July 15, 1986.

Anita I. Rodarte, Thayer, Bernstein & Bass, P.C., Kansas City, for respondent.

Gina Graham, Cochran, Tyree, Oswald, Barton & McDonald, P.C., Blue Springs, for appellant.

Before SHANGLER, J., Presiding, and DIXON and GAITAN, JJ.

DIXON, Judge.

The wife appeals from a dissolution decree which granted husband and wife joint legal and physical custody of their minor son with actual custody alternating be-

tween them weekly and which allocated 40% of the marital property to the wife. The wife argues primarily that the custody award is unsupported by the evidence and that the trial court abused its discretion in giving her only 40% of the marital property.

Husband and wife were married June 29, 1974. Their only child, a son, was born April 13, 1983. During the first four years of marriage, the parties lived in a house given to husband by his parents. In 1978 the house was sold and the $10,000.00 proceeds of sale invested in a marital home in Blue Springs, Missouri. In 1981 husband and wife purchased a lot and planned construction of a new home to be built by husband. He began work on the new home in May 1983, and it was still under construction when the house in Blue Springs was sold in August 1983. Consequently, the parties moved in with husband's mother. After a month, wife and child moved in with wife's mother, and husband remained in his mother's home. From September 1983 until December 1983, the parties lived together at least during some of the weekends but separately during the week. During this period, husband spent the majority of his free time trying to complete construction of the home.

The parties separated on December 12, 1983. In late January 1984, the parties reconciled and lived together for approximately a month, but then separated for the final time in February or March 1984. On May 14, 1984, they executed a separation agreement, which included provisions for property disposition and which placed custody of the child with the wife. On May 16, 1984, wife filed a petition for dissolution of marriage. She sought custody of the child and requested child support.

Shortly thereafter, wife told husband she and a friend were taking the child on a weekend trip. The husband learned that, in fact, wife had left the child with her sister and had gone to Cancun, Mexico, with her paramour. Subsequently, husband answered wife's petition and filed cross-petition for dissolution also seeking custody of the child.

The matter came to trial in May 1985. Wife requested that the court find the property settlement agreement, earlier executed by both parties, unconscionable. The trial judge disregarded the property settlement and made his own decision respecting property division; therefore, it is unnecessary to further consider the property settlement executed by the parties.

Evidence was presented concerning the marital conduct of the parties. Wife admitted to two affairs during the marriage. The first affair began in October 1982, when wife was two months pregnant. The affair continued for two to three months and involved some activity in the marital home. The second affair was with wife's supervisor at work. Wife testified that she did not begin the second affair until after her first separation from husband, but her testimony was contradicted by two other witnesses who testified that the affair was in progress by November 1983. There was some evidence that wife had spent the night with her paramour when the child was with her.

Wife claimed husband has a violent temper and has physically abused her. Husband admitted that he struck wife on the leg once with a gun-cleaning rod, but otherwise denied ever having done anything other than "maybe" "push her" "a couple of times." Husband also admitted that in early January 1984, during the first separation, he went to wife's parents' home with an unloaded gun and took his son. He took the child out with no blanket or shoes and he admitted that prior to that evening, the child had never spent the night with him without wife being present. Husband admitted that he is seeing a woman and has taken weekend trips with her.

Wife testified that she should be given custody of the child because her work hours are more regular and because husband is violent. Husband testified that as a truck driver, he has more flexible hours than wife and can spend more time with the child. He fears for his son's safety

when the child is in wife's custody because wife's paramour is known for his dislike for children. At times during the separation, wife has had the child sleeping at three different residences in one week. Husband told the court he could give the child a stable home to grow up in and provide a proper moral atmosphere. Husband admitted that he doesn't know until 5 p.m. one day where he will be during the next day and many of his work days begin at 4 a.m.

Both parties worked throughout the marriage. Wife did the majority of the cooking, cleaning, and laundry. Husband testified that they had had happy times; wife testified that they had not.

At the conclusion of the evidence the court entered a joint custody order, each party to have physical custody of the child on alternating weeks. In light of the custody order the court found no need for the payment of child support by either party and none was ordered. Based upon the evidence and wife's marital misconduct, the court ordered the marital property be divided with forty percent to wife and sixty percent to husband. The court valued and divided all the marital property and marital debts. To effectuate the 40/60 division of property, the court ordered husband to pay wife a cash judgment of $7,459.02 within ninety days of the judgment. Additionally, wife was awarded $2,500 for her attorney's fees. Husband paid and wife accepted $9,959.02 in satisfaction of the cash judgment and award of attorney's fees.

Wife's first point raises the issue of the propriety of the trial court's order granting the parties joint physical and legal custody of the child and requiring a weekly shift in actual custody. Neither party sought such an arrangement. Wife claims there was no evidence presented by either party which indicated that a weekly custody "shuttle" would be in the best interests of the child. She further argues that the decision was against the weight of the evidence because, she claims, the evidence showed that she has cared for the child since his birth, that the child is well-adjusted in her custody,

that she has regular work hours as opposed to husband's schedule, that husband has a violent temper, and that husband believed it in the child's best interests to see his mother "as little as possible."

The law requires that the court determine custody in accordance with the best interests of the child. § 452.375.2, RSMo 1984. Joint legal custody and joint physical custody are both options authorized by statute and are defined as follows:

(1) **"Joint legal custody"** means that the parents share the decision-making rights, responsibilities, and authority relating to the health, education and welfare of the child, and, unless allocated, apportioned, or decreed, the parents shall confer with one another in the exercise of decision-making rights, responsibilities, and authority;

(2) **"Joint physical custody"** means an order awarding each of the parents significant periods of time during which a child resides with or is under the care and supervision of each of the parents. Joint physical custody shall be shared by the parents in such a way as to assure the child of frequent and continuing contact with both parents.

§ 452.375.1, RSMo 1984. Such a custody arrangement appears attractive on its face. Both parents remain actively involved in the care of the child and the child is assured of a continuing relationship with both parents. The arrangement seems even more attractive when the evidence shows both parties to be fit and loving parents. Unfortunately, love between the parent and the child may not be enough in every case to make an award of joint legal and physical custody in the *best interests of the child*. Obviously, the joint custody statutes contemplate a great deal of contact between the parents, as well as between each individual parent and the child. While the statute does not expressly require agreement of the parents as a prerequisite to an award of joint custody, the plan is not likely to be in the child's best interests if the parents cannot "agree to agree."

*See Kline v. Kline,* 686 S.W.2d 13, 16 (Mo. App.1984).

■ Before a joint custody plan can be said to be in the best interests of the child, there should be some evidence in the record to support a finding that the parents are emotionally equipped to deal with each other as equal partners in the care of their child. It is simply not in the best interests of a child to allow him to become a pawn between parents who are consciously or subconsciously using the child to vent their frustrations at each other.

In the instant case there is a father who at one time took his son from the mother at gunpoint and a mother who has lied to the father about the child's whereabouts and refused to let him see the child for weeks at a time. The father disapproves of the mother's life style and her paramour. The mother feels the father's work schedule is too irregular to provide stability for the child. Both parties accuse the other of lying about this or that. While the father stated to the court that in regard to custody, he would abide by the court's decision, he also stated it would be in the child's best interests to see the mother "as little as possible." It is simply unrealistic to believe that these two people are going to suddenly put their differences aside and work together in close and continuing contact to further "the best interests" of the child.

■ Even if joint legal and physical custody were feasible in this case, the part of the order setting forth the terms of the custody is unacceptable. There is absolutely no evidence in the record to show that a weekly custody shuttle is in the best interests of this child. As was aptly stated in *Bashore v. Bashore,* 685 S.W.2d 579, 581 (Mo.App.1985):

> A further defect in the custody award in this case is an absence of any apparent consideration by the trial court of the best interests of the children or of any evidence to support the disposition ordered. It is axiomatic to say that custody is not to be a reward or punishment of either parent, but is to be based on the ultimate and sole test of what will be in the best interests of the children. *Knoblauch v. Jones,* 613 S.W.2d 161, 165 (Mo. App.1981). Generally speaking, except for good reason, a minor child should not be shifted periodically from one home to another. It is unwise to transfer custody frequently and not at all unless it is demonstrated by a preponderance of the evidence that the continued well-being of the children requires the change. *Leimer v. Leimer,* 670 S.W.2d 571, 574 (Mo. App.1984).

> Appellant contends that the weekly custody shuttle was not shown by any evidence here to be in the best interests of the children but, instead, is detrimental to their welfare. The failure by the trial court to mention in its findings how the custody as ordered served the children's interests leaves the order inherently vulnerable and suspect because of its terms. Those provisions leave the children as weekly transients having no permanent home at the residence of either parent. The consequences are predictably to be confusion and instability. *It would be an exceptional case in which deference to the trial court's discretion would warrant affirmance of an alternating weekly custody disposition and then, only on a record in which evidence showed that disposition to be in the best interests of the child.* Here, absent any evidence supporting the decree, deference is not to be accorded.

(Emphasis added).

■ The same language is applicable here. The parties were not in the practice of exchanging custody weekly prior to the date of the decree, and neither party sought such an arrangement. The record is devoid of any evidence showing what the effect of such an arrangement would be on the child. The custody award in this case is not supported by substantial evidence and is therefore reversed. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

In her second point, wife complains the trial court erred in failing to award her child support. The trial court concluded

that since the parties had been granted equal periods of physical custody of the child there was "no need for the payment of child support by either party." In light of the reversal of the trial court's custody determination, it is also necessary to remand the child support issue for reconsideration by the trial court.

In her third point relied on, the wife claims the trial court erred in awarding her only 40% of the marital property.

In his initial response, husband claims that wife is estopped from appealing from the trial court's division of marital property because she has accepted the benefits of the property judgment. To effectuate a 40/60 split of the property, the trial court—after allocating the items of marital property—ordered husband to pay wife an additional $7,459.02. In addition, husband was required to pay wife $2,500 for attorney's fees. On September 28, 1985, wife acknowledged receipt of $9,959.02 from husband "in satisfaction of that portion of the judgment and decree ... concerning the division of marital property." The signed acknowledgement specifically stated that wife was not "waiving her right to appeal said judgment." Several cases discuss similar factual settings in which the right to appeal was questioned. *See Block v. Block,* 593 S.W.2d 584 (Mo.App.1979); *Hull v. Hull,* 591 S.W.2d 376 (Mo.App.1979); *In re Marriage of E.A.W. and C.M.W.,* 573 S.W.2d 689 (Mo.App.1978); and *Knebel v. Knebel,* 189 S.W.2d 464 (Mo.App.1945).

In *Smith v. Smith,* 702 S.W.2d 505 (Mo. App.1985), the court noted that the general rule that one may not proceed upon a judgment and attack it on appeal has its "exceptions." *Id.* at 506. In *Smith* the husband filed a motion to dismiss the wife's appeal from a dissolution decree after she accepted $225.02 under a garnishment issued upon the judgment of dissolution. The court stated:

> Whether or not the acceptance of partial payment of a judgment constitutes an exception [to the general rule] is to be decided on a case by case basis considering all relevant circumstances. Included

in the factors which have been considered in finding such an acceptance to be an exception to the general rule are the following: The amount received was a small portion of the total judgment, *Block v. Block,* 593 S.W.2d 584 (Mo.App. 1979); the amount accepted has effectively been conceded to be due by a husband who did not appeal, *In re Marriage of Abild,* 243 N.W.2d 541 (Iowa 1976); the acceptance of benefits was due to financial distress, *Haggard v. Haggard,* 550 S.W.2d 374 (Tex.Civ.App.1977); the absence of prejudice to the judgment debtor husband, *In re Marriage of Abild,* supra; and where the only issue on appeal is whether an award will be increased, *Esposito v. Esposito,* 158 N.J. Super. 285, 385 A.2d 1266 (1978); *Anderson v. Anderson,* 72 Wis.2d 631, 242 N.W.2d 165 (1976). It has been observed "the general rule pertaining to acquiescence in judgments should not be strictly applied in divorce cases because of the peculiar situations of the parties and the equitable considerations involved." *Gordon v. Gordon,* 218 Kan. 686, 545 P.2d 328, 333 (1976).

*Id.* at 506–507.

Applying these factors in the instant case might make a very close issue but for the wife's declaration at the time of payment that she intended to appeal. The fact that the payment was made in the face of a claim of right to appeal tips the scale in the instant case to permit the appeal.

Turning to the merits of the issue, the trial court must be guided by all relevant factors in the division of marital assets, including those set forth in § 452.330.1, RSMo 1984:

(1) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(2) The value of the property set apart to each spouse;

(3) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family

home or the right to live therein for reasonable periods to the spouse having custody of any children; and

(4) The conduct of the parties during the marriage.

The parties concede that there is no dispute regarding factors (2) and (3) as set forth above. No separate property was set aside to either party and neither party received any income producing property. Income and expense statements filed in 1985 showed that the incomes of the parties at the time of the property division were nearly equal. Normally, the decision to rehear the custody issue would require the trial court to reconsider the disposition of the marital home. The wife has never questioned the propriety of the trial court's award of the marital home to the husband. Under the peculiar circumstance of the wife's lack of interest in living in the marital home, that issue is not present in the case. It is the wife's contention that the trial court's property division was a result of placing undue emphasis on wife's marital misconduct and failing to recognize her considerable contribution to the marriage. She sought in the trial court, and she seek here, only a larger monetary award.

It is uncontroverted that wife did the majority of cooking, cleaning, and laundry throughout the marriage. In addition she worked full-time and participated in the care of the child. It is also uncontroverted that wife had two affairs during the marriage.

Husband also worked full-time during the marriage and put in a great deal of overtime to generate extra income. He built the marital residence himself and the residence was without doubt the parties' most valuable asset. The allegations of husband's misconduct were disputed. Although he admitted to the "gun incident," he generally denied wife's allegations of physical abuse and violence.

■ Where there is a conflict in the evidence, the trial court has the prerogative to determine the credibility of the witnesses. *Ware v. Ware*, 647 S.W.2d 582, 584 (Mo. App.1983). Moreover, the property division

must be just but it need not be equal. *Lewis v. Lewis*, 637 S.W.2d 207, 209–210 (Mo.App.1982). The evidence in the instant case showed that both parties worked hard to make the marriage prosper economically. In his discretion the trial judge found wife's misconduct warranted a 40/60 split of the marital property, and the split is not so disparate as to be clearly unfair. The trial court's decision is not unsupported by the evidence and, therefore, must be deferred to here. *Murphy v. Carron*, 536 S.W.2d at 32.

In her final point wife claims the trial court erred in its division of the marital property because it included debts in the division of property that were incurred solely by husband after the separation and not for a marital purpose. She also claims the trial court erroneously included in the marital debt over $11,000 allegedly owed as interest to husband's mother without substantial evidence to support such a finding.

■ While debts owed by the spouses are not marital property, the existence of debts and who will be responsible for their payment are factors the trial court should consider in establishing a fair division of marital assets. *In re the Marriage of Kluba*, 647 S.W.2d 920, 921 (Mo.App.1983); *Oldfield v. Oldfield*, 688 S.W.2d 778, 781 (Mo.App.1985). Although the trial court is not required to allocate debts between the parties, it is a commendable practice to do so because it serves to alleviate future dissention between the parties. *Gonzalez v. Gonzalez*, 689 S.W.2d 383, 386 (Mo.App. 1985).

■ In the present case, it is obvious that the trial court was desirous of effecting a 40/60 split of the marital property after fully accounting for the marital debts. The trial court included interest of approximately $11,000 in the amount of debt designated as a home construction loan. Husband's testimony clearly supported such an action by the trial court. As was said in *Cole v. Cole*, 633 S.W.2d 263, 265 (Mo.App.1982):

Whether or not the $10,300 item was a true and bona fide loan from the mother with continued expectation of repayment was purely a question of fact, depending for the most part on the credibility of the witnesses. The finding of the trial court in favor of the loan should not be disturbed under the controlling guidance of *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

Wife claims *Cole* is distinguishable because in that case the loan was evidenced by a writing and the mother testified that she did expect to be repaid. While those are differences from the present case, they are not differences that make the issue here any less of a fact question.

Likewise, the trial court's allocation to husband of the $5,000 debt to husband's mother and the $5,500 debt to Central Bank was not improper. The $5,500 loan was for payment of attorney's fees and wife was also allocated the cost of her attorney's fees as debt. Moreover, husband paid wife $2,500 of the $5,500. The $5,000 loan went for improvements to the marital residence and the trial court could properly consider it as debt affecting the fairness of the marital property distribution.

Finally, the record clearly shows that the trial court did not give "wholesale acceptance" to husband's suggested property values and disregard wife's. Many of the values placed on the property reflected a compromise between the parties' valuations. The trial court's actions in allocation of debt and property were supported by the evidence and will not be disturbed.

Reversed for new trial as to child custody and child support issues. Affirmed in all other respects.

All concur.