In re the MARRIAGE OF BARNES.

Bradley Ernest BARNES,
Petitioner–Appellant,

v.

Sherry Darlynn BARNES, Respondent–
Respondent.

No. 18333.

Missouri Court of Appeals,
Southern District,
Division One.

June 11, 1993.

[1] The record on appeal contains no formal judgment.

Henry S. Clapper, Clapper & Woodard, Monett, for petitioner-appellant.

No brief filed for respondent-respondent.

SHRUM, Judge.

Bradley Ernest Barnes (the father) appeals from a decree dissolving his marriage to Sherry Darlynn Barnes (the mother). The father limits his appeal to a challenge to the trial court's award to the parties of joint custody of their minor child, Kelby Andrew Barnes.

The father and the mother were married September 7, 1985. Kelby, their one child, was born April 9, 1987. The parties separated May 2, 1991, and the father filed his petition for dissolution on that date. The mother then filed her own petition for dissolution.

Both parties sought temporary custody of Kelby. After a hearing, the court awarded temporary custody to the mother with reasonable visitation rights, including specified dates and times, to the father. Subsequently, the father's request for a change of judge was sustained, the court permitted Kelby's paternal grandmother

Ernestine Lawrence to intervene,[1] and, upon the father's request, the court appointed a guardian ad litem for Kelby.

The court heard testimony and received other evidence on October 25 and 28 and December 16, 1991. The transcript of the proceedings on those three days exceeds 600 pages in length. In addition to the testimony of the father, the mother, and the grandmother, there was testimony by four individuals who were called by the father as witnesses.

The mother testified that if the court ordered joint custody of Kelby, she would be able and willing to work with the father and the grandmother and she said she would be able to communicate with the father about physicians' appointments and medications for the child. The father said that if joint custody were ordered, he would be willing to work together and confer with the mother about the child's upbringing, but he had "a feeling" it would not "work out" because the mother was "not willing to work with me at all."

At the close of evidence on December 16, the court addressed the parties:

I'm going to incorporate in my decree a rather specific joint custody plan. And I'm going to expect that that joint custody plan be fully complied with by the parties in this case. And if it is not complied with, I anticipate that it would not be extraordinary for the Court to have to exercise its juvenile court jurisdiction in this matter, perhaps to remove the child totally from the influence of the parents and the grandmother and allow the Division of Family Services to provide protective services or some other protection and assistance for this child. I'm hoping that it doesn't come to that. But, frankly, I've not been impressed with any of the parties' performances to this date and it looks to me like that's the way things are headed.

The court then retained in effect all temporary orders, ordered specific additional visitation for the Christmas holiday, and ordered the guardian ad litem to prepare a proposed joint custody plan that was to include required counseling for all parties and "real communication with one another, rather than using the child as the vehicle for their communication or miscommunication."

On January 27, 1992, the father moved to reopen the case to present additional evidence. The court granted the motion for purposes of hearing evidence of a change of circumstances since the December 16 hearing, and it set March 10 as the new hearing date.

On March 10, 1992, the court entered its decree dissolving the marriage, modified the temporary visitation arrangement, and took under advisement matters of child custody, support and visitation; property division; maintenance; and attorney fees. There is nothing in the record to indicate the court heard evidence concerning the alleged change of circumstances.

On March 13, the guardian ad litem filed his proposed joint custody plan, the visitation provisions of which were objected to by the father's attorney, although the record does not indicate the nature of the objection. On July 13, 1992, the court entered its decree, which disposed of all remaining issues and incorporated the joint custody plan as submitted by the guardian ad litem.

Under the custody plan the father and mother have joint legal and physical custody of Kelby. The plan sets out specific dates and times of physical custody and visitation that takes into account periods of school attendance, summer vacations, holidays, and other special occasions. The plan states certain general and specific requirements for cooperation and communication among the parties and requires the parents, the child, and the grandmother to obtain counseling.

In its decree the trial court recited that it had considered all relevant statutory factors, and it stated its conclusion that joint custody is in the best interests of Kelby. The court made no specific factual findings concerning the various factors of § 452.-

---

1. The grandmother sought visitation rights pursuant to § 452.402, RSMo Supp.1988.

375.2, no findings about the fitness of either parent as a custodian, and none about the parents' ability and willingness to participate in a joint custody arrangement.

## STANDARDS OF REVIEW

Our review of a dissolution decree is governed by Rule 73.01(c) and the principles enunciated in *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976). *Mistler v. Mistler*, 816 S.W.2d 241, 245[1] (Mo.App.1991). Thus we must affirm the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy*, 536 S.W.2d at 32[1].

When determining the sufficiency of the evidence, we accept as true the evidence and inferences from the evidence that are favorable to the trial court's decree and disregard contrary evidence. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654[2] (Mo.banc 1989). All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached. Rule 73.01(a)(2); *In Re Marriage of Dempster*, 809 S.W.2d 450, 456[4] (Mo.App.1991).

The phrase "weight of the evidence" means its weight in probative value, not the quantity or amount of evidence. The weight of the evidence is not determined by mathematics; it depends on its effect in inducing belief. *Johnson v. Gregg*, 807 S.W.2d 680, 685[1] (Mo.App. 1991). Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is against the weight of the evidence with caution and with a firm belief that the decree or judgment is wrong. *Murphy*, 536 S.W.2d at 32[2].

We give due regard to the trial court's opportunity to judge the credibility of the witnesses. Rule 73.01(c)(2); *T.B.G.*, 772 S.W.2d at 654. The trial judge may believe or disbelieve all, part, or none of the testimony of any witness, *Id.* at 654[1], and the court may disbelieve testimony even when uncontradicted. *In re Mar-*

*riage of Lewis*, 808 S.W.2d 919, 922[3] (Mo. App.1991).

We defer to the trial court's findings on custody matters unless we are convinced the best interests of the child require a different disposition. *O.J.G. v. G.W.G.*, 770 S.W.2d 372, 375[2] (Mo.App.), *cert. denied*, 493 U.S. 992, 110 S.Ct. 540, 107 L.Ed.2d 538 (1989); *Heermance v. Heermance*, 706 S.W.2d 548, 551[5] (Mo. App.1986).

## APPLICABLE STATUTORY PROVISIONS

Section 452.375, RSMo Cum.Supp.1992, governs this child custody determination. Subsection 2 requires the trial court to make its custody decision "in accordance with the best interests of the child" after considering "all relevant factors." This introductory portion of subsection 2 simply reiterates the longstanding policy of this state that child custody determinations must be based on the welfare and best interests of the child. *See In Re Scarritt*, 76 Mo. 565, 582, 589 (1882). Subsection 2 also sets out a non-exclusive list of factors the court is to consider in making its determination.

Section 452.375 was significantly amended in 1988. Among the changes by the general assembly were the addition of new subsection 3 and the revision of the second sentence of prior subsection 3 and its renumbering as subsection 4. Subsection 3 now makes the following declaration of public policy:

3. The general assembly finds and declares that it is the public policy of this state to assure children frequent and meaningful contact with both parents after the parents have separated or dissolved their marriage, and that it is in the public interest to encourage parents to share decision-making rights and responsibilities of child rearing. In order to effectuate this policy, the court shall determine the custody arrangement which will best assure that parents share such decision-making responsibility and authority and such frequent and meaningful contact between the child and each

parent, as is indicated in the best interests of the child under all relevant circumstances.

Subsection 4 now provides, in pertinent part:

4. Prior to awarding the appropriate custody arrangement in the best interest of the child, the court shall consider each of the following as follows:

(1) Joint custody to both parents, which shall not be denied solely for the reason that one parent opposes a joint custody award;

(2) Sole custody to either parent; or

(3) Third party custody or visitation....

## DISCUSSION AND DECISION

For a thorough and enlightening analysis of the nature and effect of the enactment of subsections 3 and 4 as part of the 1988 revision of Section 452.375, see *Margolin v. Margolin*, 796 S.W.2d 38, 48–50 (Mo.App. 1990). While we need not unduly lengthen this opinion with a restatement of Judge Shangler's entire discussion, we do recapitulate certain of the *Margolin* opinion's observations.

■ Since 1983, joint custody has been available as an option for a trial court to exercise in the best interests of the children of divorcing parents. § 452.375.3, RSMo Supp.1983; 796 S.W.2d at 48. In 1988, with its enactment of new subsections 3 and 4, the legislature expressed a public policy preference for joint custody where such arrangement is in the best interests of the child. 796 S.W.2d at 48–49.

The 1988 amendment also establishes a scheme by which a trial court is to make a custody determination. The court is to "determine first whether under all the relevant circumstances joint custody is in the best interests of the child. If so, the inquiry ends. If not, the court continues to the next option in the order enumerated in subsection 4 until the adjudication of custody is done." 796 S.W.2d at 50.

As the *Margolin* opinion points out, the preference stated in the 1988 amendment "is not that of a forced joint custody in order to induce the parents to find a common ground." 796 S.W.2d at 49. Rather, it is a preference "in favor of parents who show the willingness and ability to share the rights and responsibilities of child-rearing even after they have dissolved the marriage." *Id.* Thus, under our *Murphy v. Carron* standard of review, there remains the requirement, as stated in pre–1988 amendment cases, that there be substantial evidence to support an award of joint custody. *See, e.g., Lipe v. Lipe*, 743 S.W.2d 601, 602–03[2] (Mo.App.1988); *Brisco v. Brisco*, 713 S.W.2d 586, 590[1] (Mo.App.1986).

■ We conclude there is substantial evidence in the record to support the order of joint custody. After considering all relevant factors, the trial court concluded joint custody is in the best interests of Kelby and we are not convinced otherwise. Moreover, both parents testified about their ability and willingness to work with the other in a joint custody arrangement. The trial court was free to disregard the father's testimony that the mother was "not willing to work with me at all." *Compare Marriage of Dempster*, 809 S.W.2d at 454–55.

■ Having determined there is evidence to support an award of joint custody, we turn now to the weight of the evidence, another aspect of our *Murphy v. Carron* standard of review and the only issue raised in the father's brief. In his single point relied on, the father contends the trial court erred in awarding joint custody "because the conclusion that the best interests of the child would be served by granting [the mother] joint custody was against the weight of the evidence in that [the mother] failed to properly care for the child and the child was better cared for while in the custody of [the father]." [2]

At this point, we find it necessary to comment on the facts as related to us in the father's brief. Supreme Court Rule

---

**2.** By focusing solely on the weight of the evidence in his point relied on, the father appears to concede there is substantial evidence to support an award of joint custody. Concession or not, our review of the record convinces us there is substantial evidence to support the award.

84.04(c) requires that the statement of facts portion of an appellate brief be "a fair and concise statement of the facts relevant to the questions presented for determination without argument." The primary purpose of the statement of facts is "to afford an immediate, accurate, complete and unbiased understanding of the facts of the case...." *Wipfler v. Basler*, 250 S.W.2d 982, 984[3] (Mo.1952) (applying predecessor Rule 1.08). *See also Pioneer Finance Co. v. Washington*, 419 S.W.2d 466, 468 (Mo.App.1967) (applying predecessor Rule 83.05); *State ex rel. Missouri Hwy. and Transp. Comm'n. v. Pipkin*, 818 S.W.2d 688, 690 (Mo.App.1991).

The father presents a statement of facts that portrays himself as virtually without fault while painting the mother as nearly unfit to be a custodian for her child. An independent review of the transcript makes it clear that the father's statement of facts does not provide "an immediate, accurate, complete and unbiased understanding of the facts of the case...." *See Wipfler*, 250 S.W.2d at 984[3].

Moreover, in the argument portion of his brief, the father misstates the evidence. The father contends that a psychologist who evaluated Kelby and interviewed the father and the grandmother "concluded that joint custody would not work in this case because of the parties' conflict and animosity." When we turn to the portion of the transcript where the father claims support for this assertion, we find the following:

Q. (by the mother's attorney to the father): Now, you've had an opportunity to read her [the psychologist's] report, which has been received as [the father's] Exhibit 8?

A. Yes, I have.

Q. Did you note her comment that the parents' conflict and animosity with each other *may* make joint custody an unworkable arrangement? (Our emphasis.)

A. I read that.

The father's Exhibit 8 is not a part of the record on appeal so our only insight into the psychologist's conclusion is the mother's attorney's question which indicates the psychologist thought it a possibility—not a certainty, as father claims—that joint custody would not work. Moreover, it was the province of the trial court to attach whatever weight it deemed appropriate to the psychologist's conclusion, whatever that conclusion might have been.

We now turn from the father's presentation of facts to his argument. The father tracks through the eight factors set out in § 452.375.2 and selectively recounts evidence regarding the parents, the grandmother, and the child that is relevant to each factor. The father's discussion, as it is presented, might be helpful if the trial court had rejected joint custody and we were reviewing a trial court decision on the relative merits of each parent to be the sole custodian of the child. However, the issue presented by the decree and the father's appeal is whether the award of joint custody was against the weight of the evidence.

We have reviewed the record, and we conclude the father's claim—that the joint custody order was against the weight of the evidence and not in the child's best interests—is without merit. There was evidence that both parents are fit custodians, that both are able and willing to participate in a joint custody arrangement, and that joint custody is in the best interests of the child. On the other hand, there was evidence to the contrary. *Compare Marriage of Dempster*, 809 S.W.2d at 455–56. Although the trial court's apparent pessimism might prove to be well founded, we do not have a firm belief the trial court order was wrong. *Murphy*, 536 S.W.2d at 32[2].[3]

The judgment is affirmed.

PARRISH, C.J., and CROW, P.J., concur.

---

3. The father calls our attention to two cases in which the court of appeals reversed an order of

joint custody: *Russell v. Russell,* 782 S.W.2d 406 (Mo.App.1989), and *Brisco,* 713 S.W.2d 586. Neither is a "weight of the evidence" case, and neither is helpful to the father.

In *Russell,* the court reviewed the evidence and concluded it was "quite clear that the father by every standard is qualified to have custody of the little girls." 782 S.W.2d at 407. In contrast, the court of appeals described the mother's "pattern of conduct" and the "recent course of her life" as "irresponsible," *Id.,* and the court apparently came to the conclusion that there was no evidence that the mother was fit to be a custodian of the children. As a result, the court held, the trial court misapplied the law when it based its custody award on "the need for girls to be under the care and guidance of a mother...."

*Id.* at 407[1]. The *Russell* court relied on § 452.375.6, RSMo Supp.1988, which provides, "As between the parents of a child, no preference may be given to either parent in the awarding of custody because of that parent's ... sex ... nor because of the age or sex of the child."

In *Brisco,* the court concluded there was no substantial evidence to support an award of joint custody. 713 S.W.2d at 590[4]. The court found no evidence that "the parents are emotionally equipped to deal with each other as equal partners in the care of their child" and no evidence that "a weekly custody shuttle is in the best interests of this child." *Id.* at 590[1, 3].

In contrast to the court's rulings in *Russell* and *Brisco,* we have concluded there is evidence to support the award of joint custody.