**Richard Dean ROBERTS, Respondent,**

v.

**Glenice Ann ROBERTS, Appellant.**

**No. WD 33390.**

Missouri Court of Appeals,
Western District.

May 24, 1983.

William Y. Frick, Frick & Fraser, Kirksville, for appellant.

Keith W. Hicklin, Hicklin & Dial, Memphis, for respondent.

Before PRITCHARD, P.J., and MANFORD and NUGENT, JJ.

NUGENT, Judge.

Mrs. Roberts appeals from that part of the circuit court's decree in this dissolution proceeding which apportioned marital property, awarded her $175 per month child support for each of two minor children, and denied maintenance. She argues that the child support award was insufficient; that the apportionment of marital property should have been weighted in her favor rather than mathematically equal; and that the denial of maintenance leaves her without sufficient means to support herself and meet her reasonable needs. She appeals as well from the court's order following a post-trial hearing denying her maintenance pending appeal and allowing only $400 in attorney's fees on appeal. These appeals were consolidated on March 17, 1982. We affirm.

Mr. and Mrs. Roberts were married on June 1, 1957, and separated in January, 1981. Six children were born of the marriage—Michael Dean, 22, Olin Daniel, 21, Lucy Jo, 19, Jean Ann, 17, Lori Lynn, 13, and Martin Eric, 12. Only the three younger children lived at home at the time of separation. The trial court awarded custody of Jean Ann and Martin Eric to Mrs. Roberts, and custody of Lori Lynn to Mr. Roberts. Custody of these children is not at issue on this appeal.

Mr. Roberts, 47, is employed as the postmaster in Lancaster, Missouri, and brings home between $710 and $718 every two weeks. In addition, he receives $1,016 each month in non-taxable navy disability pay stemming from an injury received in the Korean War, bringing his after-tax monthly income to $2,444.

Testimony at trial indicated that Mr. Roberts had numerous outside interests. He spent much of his non-working time coon hunting, raising and trading in hunting dogs, and building racing cars. The latter hobby occupied many of his weekends and evenings from 1965–1972 during which he attended races and worked on the cars. Hunting not only occupied occasional days and weekends but week-long trips to Minnesota. In twenty-three years of marriage, he vacationed with his family only three times.

Testimony also indicated, however, that Mr. Roberts has served as president of the Little League since 1968, coaching two or three teams. Several of his children have participated in this sport. In addition, he has devoted considerable time to his two older sons' interest in amateur boxing, renting a place for them to train, taking them to fights every week or two, and attending all their matches. Both boys won "Golden Gloves" in Kansas City.

At trial, Mr. Roberts' health was extensively discussed. Some years ago he suffered from ulcerative colitis and underwent an ileostomy (surgery in which the bowel is restructured to discharge through an opening or "stoma" in the abdominal wall). He now suffers from a bleeding, ulcerated stoma said to be aggravated by the handling

of mail bags at the post office. In addition, he has both an arthritic knee on which he has undergone surgery, and chronic bronchitis.

Mr. Roberts also testified that he moved out of the family home because he and his wife "just couldn't get along." He told the court of one incident said to reveal the problems in their relationship which occurred in 1969. At that time, Mrs. Roberts, then the mother of children aged 9, 8, 6, 4 and six months, discovered that she was pregnant again. In spite of her husband's disapproval, she went to Chicago to seek an abortion but returned without having obtained one. The couple's sixth child, Martin, was born shortly thereafter.

Although Mrs. Roberts, 49, earned approximately fifty hours of college credit and taught school prior to the marriage, she has no teaching degree. She did no outside work during the marriage, except for a period of several months in which she clerked in her husband's mother's store. She provided substantially all the care for the children and the home with little help from her husband, including maintaining a vegetable garden and raising and dressing chickens. Following her separation from her husband, she found employment as a nurse's aide at a nursing home, earning $3.35 per hour (minimum wage), bringing home $212.50 every two weeks. She testified that she has no health problems.

Mrs. Roberts stated at trial that to support herself and the three children in her care at that time she expected to incur monthly expenses of $1350, including $400 for groceries, $250 for automobile operating expenses, $170 for clothes, and $60 for home maintenance and repairs. At the post-trial hearing, that estimate was adjusted downward to $1119 for herself and the two children placed in her custody.

The couple's property included the following: the homestead, consisting of seventy-six acres and several out buildings valued at $105,000; a one-sixth interest valued at $7,750 in Prairie Lake Farms, a 120-acre tract of farmland and timber on which Mr. Roberts and the co-owners have unsuccess-

fully attempted to raise crops; household goods and furnishings totalling $5,000; a 1977 Ford rebuilt by Mr. Roberts valued at $1,500; a 1981 Oldsmobile valued at $9,900; numerous firearms totalling $2,177; various tools, mowers and garden tillers valued at $2,400; dogs and other livestock totalling $8,500; corporate stock in Timbers Unlimited valued at $17,524; three life insurance policies with a combined cash value of $7,793; an account receivable valued at $500; and Mr. Roberts' federal pension valued at $13,959.

Liabilities included various promissory notes and unpaid bills totalling over $15,000.

In his memorandum opinion dated July 31, 1981, the trial judge specifically noted that, other than the testimony as to Mr. Roberts' hunting and racing interests, the record shows no allegations of marital misconduct, and that although the husband has superior earning capacity, the wife has superior health as well as a capacity to improve her ability to earn. Accordingly, "every attempt" was made to divide the marital property equally. Noting Mrs. Roberts' need for the house for herself and her children, the court awarded her the 76-acre homestead, the household goods and the 1977 Ford, totalling in value $111,500. All remaining property, totalling $67,004.05 was awarded to Mr. Roberts, who was ordered to pay the outstanding debts of $15,017.19. Recognizing that after debt payment, Mr. Roberts' award totalled only $51,986.86, the court ordered Mrs. Roberts to pay her husband $29,683.50 on or before January 1, 1984. Mr. Roberts was granted a special lien against the homestead until that amount is paid in full. This obligation is to carry no interest. The lien brought the total awarded to Mrs. Roberts to $81,816.50 and the total to Mr. Roberts, $81,670.36.

In addition, child support for Jean Ann and Martin Eric was set at $175 per month each, or $350. Maintenance was denied and Mr. Roberts was ordered to pay his wife's attorney's fees in the amount of $1,917 plus costs.

On January 29, 1982, a post-trial hearing on motion for temporary maintenance during appeal was held at which Mrs. Roberts testified that her monthly expenses for herself and the two children in her custody since trial totalled $1119. Her attorney contrasted her net monthly income of $774 (salary of $424 plus $350 for child support) with both this monthly expense and Mr. Roberts' net monthly income of $2,094 ($2,444 less $350 for child support). Nevertheless, the court denied Mrs. Roberts' request for temporary maintenance during appeal, but awarded her $400 for attorney's fees plus $200 transcript costs.

On appeal, Mrs. Roberts raises the following points: (1) the trial court erred in setting child support at only $175 per month per child because the husband has the primary responsibility for the support of the children, the needs of the children exceed that amount, and the award was against the weight of the evidence; (2) the equal apportionment of marital property was an abuse of discretion because the husband was guilty of misconduct, his earnings greatly exceed the wife's, and she has virtually no prospects of improving her income; (3) the court erred in refusing to grant maintenance; and (4) the court's ruling denying maintenance pending appeal and allowing only $400 in attorney's fees on appeal was both erroneous and an abuse of discretion.

■ As to Mrs. Roberts' first point that the child support award was inadequate, we note that the amount of child support rests within the sound discretion of the trial court. *Larison v. Larison*, 524 S.W.2d 159 (Mo.App.1975). We must defer to that court's judgment unless the evidence is "palpably insufficient" to support it. *D___-___M___S___ v. P___E___S_-___*, 526 S.W.2d 361, 362 (Mo.App.1975).

■ Although Mrs. Roberts stated at trial that she required $1350 per month to support herself and three children, she did not indicate what part of that figure was for her support and what part was for the support of the children.[1] The court's burden in setting child support, then, was to determine the amount necessary for the support of two children rather than three children and one adult, a figure it was not provided, nor are we. In this context, we have great difficulty finding the amount awarded inadequate. Testimony that $1350 is necessary for the support of four people suggests that more than $350 is required for the support of two, but the trial court was free to accept or reject Mrs. Roberts' testimony as to "necessary" expenses when setting child support, and thus was under no obligation to accept the $1350 figure. *Oberkrom v. Oberkrom*, 608 S.W.2d 449, 450 (Mo.App.1980); *Blair v. Blair*, 571 S.W.2d 480, 482 (Mo.App.1978).

Mrs. Roberts asks us to contrast the $350 monthly award with the guidelines appearing in Missouri Family Law § 13.39 (3d ed. 1982), which suggest that for a monthly salary of $2500, child support for two children might be set at $537 ($441 plus 17.5% of the salary in excess of $1950). We recognize the value of such guidelines to trial courts, nevertheless, we note that this guide is used only in certain counties. We are not told whether the judges in the First Judicial Circuit follow the guidelines and we cannot but wonder whether the appropriateness of those figures might vary with the character, customs, and economy of the locality. Recognizing that the cost of support in some areas of the state may well be less than in others and that the guidelines do not have the force of law, we cannot impose these figures on courts not embracing them as their own.

Here, where the court awarded Mrs. Roberts $350 per month to support two children, without benefit of a separate estimate as to the cost of their support alone, and eliminated her need to make any mortgage or rental payments for their shelter by awarding her the family home, we cannot find the abuse of discretion she urges. Al-

---

1. Similarly, at the post-trial hearing, the figure of $1119 per month for the support of herself and two children was not split to indicate the cost of her support separate from the support of the children.

though she cites us to numerous cases which approved child support awards of a much higher percentage of the father's income, those cases all acknowledge the deference we must give the trial court in balancing the factors enumerated in § 452.340,[2] including the needs of the children. If that court had found a need for a higher percentage we would certainly not second-guess that finding. Here, the trial court apparently found no indication that the needs of the two children in their mother's care would go unmet. Absent a showing by Mrs. Roberts of an error in this judgment or abuse of discretion, we cannot set it aside. *Hilger v. Hilger,* 570 S.W.2d 736, 739 (Mo.App.1978). The mere fact that the award was not liberal in light of the husband's income does not permit us to label it "palpably insufficient." *See Hilger v. Hilger, supra,* in which child support of $200 per month was affirmed despite the husband's $50,000 income.

On these facts, we affirm the child support award of $175 per month per child.

In Mrs. Roberts' second point, she argues that the marital property apportionment should have been weighted in her favor because her husband was guilty of misconduct, his earnings greatly exceed her own, and she has no prospects for improving her income.

■ Section 452.330–1 lists those factors which must be considered in the distribution of marital property as follows:

(1) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(2) The value of the property set apart to each spouse;

(3) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children; and

(4) The conduct of the parties during the marriage.

Mrs. Roberts' contention that the distribution must be weighted in her favor is primarily based on her characterization of the time her husband spent hunting and racing cars as "misconduct." She contrasts his willingness to spend money on his own interests with a "pronounced stinginess" for his family's needs. Distressing as such conduct may be, we cannot agree that Mr. Roberts' outside interests rise (or more appropriately, sink) to the level of misconduct justifying an unequal division of property. Generally, such "misconduct" is found in sexual infidelity, cruelty or physical abuse. Absent such evidence, we agree with the court in *Spicer v. Spicer,* 585 S.W.2d 126, 128 (Mo.App.1979), that in any marriage of this duration, "there is fault enough—of the order proved here—to go around."

■ As to Mrs. Roberts' additional contention that the trial court's appropriation of property failed to consider either her husband's superior income or her poor prospects for improving her income (factors arguably within § 452.330–1(3)), the record of the post-trial hearing shows that with the two children now in her custody, she considers $1119 necessary to meet monthly expenses. Combining her present income and child support award she received $774, leaving a gap of $345. The court was not only aware that the award of the 76-acre homestead relieved her of shelter expenses and allowed her to continue raising vegetables and chickens to feed her family, it knew also that her emancipated son, Michael, had agreed to rent the land awarded to Mrs. Roberts for $18–20 per acre in the summer months, or over $1300 for that season (averaging an additional $108 per month over the year). The gap now narrows to $237. In addition, evidence was adduced that the buildings on the acreage (including a barn

**2.** All sectional references are to Revised Statutes of Missouri, 1978, unless otherwise indicated.

and a 72′ × 50′ sheep barn) had an unspecified rental value.

The court was also aware that many of the anticipated expenses presented by Mrs. Roberts were *estimates* rather than actual figures (and, in fact, exceeded any amounts she had had available to her to meet household expenses during the marriage) and that in spite of the claimed gap between income and expenses, at the time of the post-trial hearing, several months after the initial award, she had incurred no indebtedness to meet expenses.

Moreover, in its memorandum opinion, the court specifically expressed concern for Mr. Roberts' "disabling physical conditions which restrict [his] activities," referring to that condition as "an important factor." He contrasted this condition with Mrs. Roberts' "superior health," stating she "obviously has the capacity to improve her ability to earn, considering her young age and accumulated college credit." Although ordinarily we would be something less than sanguine about the prospect that a woman of forty-nine with virtually no outside employment experience in twenty-three years, educated only to the extent of a no-longer-adequate teaching license, "obviously" has the ability to improve her earnings, the trial court had the advantage of observing her at trial, and found her "bright and responsive." Apparently the court took this observation into consideration and balanced it with the husband's health problems, concluding that, while her prospects were on an upswing, his were on a decline. We have difficulty condemning this conclusion from our limited appellate perspective.

■ Nor can we say that simply because Mr. Roberts enjoys a superior income that the equal division of property was in error. This factor is not alone determinative and, in fact, "no formula [exists] respecting the weight to be given to the relevant factors which a court may consider in carrying out the mandate of the statute." *In re Marriage of Heddy*, 535 S.W.2d 276, 281 (Mo. App.1976). *See,* for example, *In re Marriage of Powers*, 527 S.W.2d 949, 956–57 (Mo.App.1975), affirming the award to the

husband of $101,500 of $197,311 in marital property in spite of his $90,000 income and admittedly improper conduct. The proportionate share to be set aside to each spouse is a matter "peculiarly within the discretion of the trial court in view of the statutory language ... of Section 452.330 ... and will not be disturbed on appeal absent a showing of an abuse of discretion." *In re Marriage of Vanet*, 544 S.W.2d 236, 240 (Mo.App.1976). The court's opinion indicates that it considered all the statutorily-required factors and made an equitable (and amazingly close to equal) division falling well within its range of discretion. We can require no more.

■ Our holding that the trial court did not abuse its discretion in finding that Mrs. Roberts has received adequate property in combination with current employment to provide for her needs is dispositive of Mrs. Roberts' third point that the trial court erred in denying her maintenance. Section 452.335 provides that the court "may" grant maintenance "only if" the spouse seeking maintenance

(1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

(2) Is unable to support himself through appropriate employment . . . .

Mrs. Roberts does not satisfy these criteria, and therefore § 452.335 does not require a maintenance award. *See Spicer v. Spicer, supra,* at 129.

Having decided that Mrs. Roberts is not entitled under the statute to a maintenance allowance, that part of her fourth point that the trial court erred in not awarding maintenance pending appeal must be rejected as well. As to her subpoint that the $400 allowance for attorney's fees on appeal constituted an abuse of discretion, we note that the issue is the reasonableness of the amount awarded, not whether *any* attorney's fees on appeal are warranted, as was the issue in *LoPiccolo v. LoPiccolo*, 547 S.W.2d 501 (Mo.App.1977), cited to us by Mrs. Roberts. That case holds that when

the transcript indicates that the appeal is not clearly without merit and the respondent can better afford the expenses of appeal, a failure to award any attorney's fees to appellant for appeal is error. The trial court here, in awarding $400, did not so err.

The statutory basis for the award of attorney's fees is § 452.355, providing that the court, "after considering all relevant factors including the financial resources of both parties *may* order a party to pay a *reasonable* amount . . . for attorney's fees . . . ." (Emphasis added.) The statute, then, leaves the questions of whether to award attorney's fees at all and their amount to the discretion of the trial court.

Here, the court chose to award Mrs. Roberts attorney's fees of $1917.57 through judgment, $991.90 for "an earlier allowance," and $400 for appeal.

Because the court is considered an expert on the reasonableness of attorney's fees, it is not bound either by the number of hours performed by counsel or the hourly charge. *Raines v. Raines,* 583 S.W.2d 564, 568 (Mo.App.1979). In *Raines,* although the case was remanded to determine whether an award was appropriate to enable the wife to pay two discharged attorneys, a total award of $450 to her latest attorney (apparently including both trial and appellate representation) was affirmed as within the court's discretion.

Section 452.355 was interpreted in *Brueggemann v. Brueggemann,* 551 S.W.2d 853, 859 (Mo.App.1977) (en banc), to entitle a party not to full attorney's fees, but only to "reasonable amounts considering the relative financial conditions of both parties." There, an award of $1000 as against a claimed need for $1600 was held to fall within the "reasonable" standard. *See also Oberkrom v. Oberkrom, supra,* at 450–51, affirming an award of $600 in attorney's fees in spite of a claim by the wife's attorney for $950, and *Cissell v. Cissell,* 573 S.W.2d 722, 725 (Mo.App.1978), affirming an award of $1400 in attorney's fees where $2950 had been charged.

Here, where Mrs. Roberts' attorney did not make a request for a specific amount to cover his work in preparing this appeal (although he now asks this court to award $1500), and where the court had already awarded attorney's fees totalling $2909.47, we find the $400 award not to constitute an abuse of discretion.

For the foregoing reasons, we affirm the order of the trial court.

All concur.