**In re the MARRIAGE OF Rickey H. VINSON and Sarah S. Vinson.**

**Rickey H. VINSON, Petitioner–Respondent,**

**v.**

**Sarah S. VINSON, Respondent–Appellant.**

**No. 17998.**

Missouri Court of Appeals, Southern District, Division One.

Oct. 7, 1992.

CROW, Presiding Judge.

By an amended decree February 3, 1992, the trial court dissolved the marriage of Rickey H. Vinson and Sarah S. Vinson. Sarah[1] appeals, presenting five assignments of error. We first address point IV, which reads:

> The trial court erred in awarding Appellant only fifty percent ... of the marital property because said division ... is not sufficient to support Appellant who is economically dependent in that Respondent is in a considerably better financial position than Appellant who needs a greater percentage of the marital property to maximize her chances of becoming economically self-sufficient.

The parties married March 20, 1971, when Rick was 24 and Sarah 23. One child, Valerie Lynn Vinson, was born of the marriage July 28, 1975.

The trial court awarded the parties joint legal custody of Valerie, with Rick to have "primary physical custody." Sarah assigns no error about the custody plan.

The only marital real estate was the family home. Sarah avowed its fair market value is $45,000, "less the mortgage of $21,366.17, giving a net equity of $23,-633.83." The trial court awarded the home to Rick and ordered him to pay the mortgage. Evidently, the court did so in recognition of § 452.330.1(1), RSMo Cum.Supp. 1991, which requires courts to consider the desirability of awarding the family home to the spouse having custody of children. The court also awarded Rick other marital property.

The marital property awarded Sarah consisted of a motor vehicle, a checking account, and sundry items of tangible personal property. To equalize the division of marital property, the trial court ordered Rick to pay Sarah $17,373.52.

On February 7, 1992, three days after filing her notice of appeal, Sarah executed a "Satisfaction of Judgment" stating:

William A. Wear, Jr., James R. Sharp, Wear, Karchmer & Nelms, Springfield, for respondent-appellant, Sarah S. Vinson.

John S. Pratt, James R. Fossard, Pratt & Fossard, Springfield, for petitioner-respondent, Rickey H. Vinson.

1. For brevity and clarity, we henceforth refer to Appellant by her first name, and to Respondent as "Rick," the appellation employed by Sarah in her testimony.

[Sarah] acknowledges satisfaction in-full of the sum of $17,373.52 as referred to [in] the Amended Decree of Dissolution of Marriage entered on the 3rd day of February, 1992.

The document was filed in the trial court March 12, 1992.

In response to Sarah's point IV, Rick maintains:

[Sarah] has waived any ... claim of error to the ... division of property for the reason that [Sarah] demanded payment of the $17,373.52 awarded by the court, [Rick] paid it and then [Sarah] filed a satisfaction of judgment thus reaping the benefits of the court's ruling. As such she is estopped from claiming error in this appeal.

■ The authorities cited by Rick include *Warren v. Warren*, 601 S.W.2d 683, 686[6] (Mo.App.1980), which explains that where the judgment debtor pays and the judgment creditor accepts the full amount of the judgment, it is thereby extinguished. Thus, the general rule is that one may not voluntarily accept the benefits of a judgment and afterwards prosecute an appeal to reverse it. *Id.* at 687[7]. The right to enjoy the fruits of a judgment and the right to attack it on appeal are inconsistent, and an election to pursue one course is an abandonment of the other. *Id.* at 687[8].

In *Warren,* a decree of dissolution of marriage awarded the wife $10,550 maintenance in gross, payable in monthly installments of $250. After entry of the decree, the ex-husband paid the ex-wife the entire $10,550 in lump sum, along with attorney fees awarded her. The ex-wife acknowledged, in writing, receipt of the maintenance in full. On appeal, she complained the trial court erred in awarding gross maintenance when periodic maintenance should have been decreed. 601 S.W.2d at 686. Noting the ex-wife never contended both maintenance in gross and periodic maintenance should have been allowed, *id,* the appellate court held that by accepting the benefit of the maintenance award, the ex-wife renounced the opportunity to assert she should have received periodic maintenance. *Id.* at 687.

Among the authorities relied on by *Warren* was *Knebel v. Knebel,* 189 S.W.2d 464 (Mo.App.1945). There, a divorce decree awarded the wife $200 as "an additional attorney's fee," but denied her prayer for alimony. She appealed. Shortly afterward, the ex-husband paid the attorney fee. He then moved to dismiss the appeal, averring that by accepting the benefit of the decree in regard to the attorney fee, the ex-wife was estopped from appealing from the decree. The appellate court acknowledged the general rule that when a litigant voluntarily accepts the benefits of a decree, he cannot afterwards take an appeal in order to reverse it, as the right to enjoy its fruits and the right to attack it on appeal are totally inconsistent. *Id.* at 466. However, added the court:

[T]his rule has its exceptions, and one exception is that the acceptance of payment, after judgment, of an item which was never in dispute will not thereby preclude the party from appealing as to the items about which there had been a controversy. In such an instance the two positions are not inconsistent, and the acquiescence in the item not in dispute could not suffice to work an estoppel with respect to any other feature of the judgment.

*Id.* at 466[3].

Inasmuch as the attorney fee award was independent of the issue of entitlement to alimony, *Knebel* held the ex-wife's acquiescence in the satisfaction of the attorney fee did not bar her from appealing the denial of alimony. *Id.* at 467.

*In re Marriage of E.A.W.,* 573 S.W.2d 689 (Mo.App.1978), employed a similar analysis. There, the wife and her sister acquired a 160-acre tract of real estate during the marriage. The decree treated a half interest in the tract as marital property, and awarded the interest to the wife. She appealed, complaining about the division of marital property. While the appeal was pending, she and her sister sold parts of the tract. The ex-husband argued the sales barred his former wife from appealing.

The appellate court acknowledged the general rule barring a litigant who voluntarily accepts the benefits of a judgment from appealing to reverse it. 573 S.W.2d at 691[1]. The court then declared:

[P]laintiff [the ex-wife] may still appeal the decree, even though she sold property granted her in the property settlement, if she would have had the right to dispose of the property before the settlement was made. Both plaintiff and defendant agree that title to the property was in the name of plaintiff and her sister before the dissolution decree. Plaintiff would therefore have had the right to dispose of the property before the decree was entered provided the conveyance was not in fraud of defendant's marital rights. . . .

We note that defendant himself has sold property throughout this litigation. . . . Whether the actions of these parties constitute a fraud upon the other spouse's marital rights is not a matter for determination here. . . . We need only conclude that plaintiff had a right, absent fraud on the other spouse's rights, to sell the property both before and after the dissolution decree. Since plaintiff had such a right, her actions in selling the property do not preclude her from appealing the dissolution decree.

573 S.W.2d at 691[2].

In the instant case, division of marital property was an issue at trial. Sarah had no right to receive $17,373.52, or any other sum, from Rick as part of the division of marital property until the trial court so ruled in its decree. Her right to the $17,-373.52 originated in the decree. Consequently, this is not a case like E.A.W., where the wife and her sister owned the 160–acre tract, to the exclusion of the wife's spouse, prior to the dissolution, hence the wife's right to sell it did not spring from the decree.

The instant case is also unlike Knebel. There, the wife's right to attorney fees was unrelated to her claim for alimony; that is, she could be entitled to the former without necessarily having a valid claim for the latter. The sum paid and accepted after the decree was for attorney fees, an item wholly unrelated to the alimony issue.

Here, the entire $17,373.52 was a marital property award. Sarah recognizes this in her brief, arguing the trial court should have awarded her additional cash "to bring her share of the marital assets up to seventy percent." She insists we should remand the case to the trial court "with instructions to award [her] . . . $25,695.00, resulting in an award . . . of seventy percent of the marital estate."

It appears from the record that at the time Sarah accepted payment of the $17,-373.52, she already had all other marital property awarded her by the decree. Thus, upon receiving the $17,373.52, she had her entire award of marital property.

■ Sarah's circumstances are analogous to those of the ex-wife in Warren, 601 S.W.2d 683, who accepted the entire maintenance award while her appeal was pending. The only difference is that here, the cash was a marital property award, while in Warren the cash was a maintenance award. Consistent with Warren's holding that acceptance of the entire maintenance award barred the ex-wife from seeking additional maintenance on appeal, we hold Sarah's receipt in full of her marital property award forecloses her from seeking additional cash as marital property in this appeal.

In so deciding, we do not ignore Smith v. Smith, 702 S.W.2d 505 (Mo.App.1985), cited by Sarah. There, a dissolution decree awarded the wife's lawyer $1,600, and awarded the wife $3,000 "upon an unspecified basis and for an unspecified purpose." An execution requested by the lawyer collected $225.02 by garnishment. The lawyer received the $225.02. The husband moved to dismiss the wife's appeal, asserting it was barred by partial collection of the monetary awards. This Court held that whether acceptance of partial payment of a judgment bars an appeal from the judgment is to be decided on a case by case basis considering all relevant circumstances. Id. at 506. Noting the sum collected was but a fraction of the attorney fee award, this Court held the wife's appeal

regarding child support, maintenance and division of marital property was not barred.

Here, as shall appear more fully *infra*, Sarah complains about the trial court's rulings on maintenance and attorney fees. Consistent with *Smith*, we hold Sarah's acceptance of the marital property award in full does not bar her complaints about maintenance and attorney fees. However, consistent with *Warren*, we conclude Sarah's complaint about division of marital property is foreclosed, and we find nothing in *Smith* inconsistent with that result.

We have also studied *Brisco v. Brisco*, 713 S.W.2d 586 (Mo.App.1986), cited by Sarah. There, in dividing the marital property, the trial court ordered the husband to pay the wife $7,459.02. The husband paid it, together with the full amount of an attorney fee award. The wife's written acknowledgement of payment stated she was not "waiving her right to appeal said judgment." *Id.* at 591. The husband nonetheless argued the wife's acceptance of the money estopped her from appealing the division of marital property. Reviewing *Smith* and other cases, the Western District of this Court held:

Applying [the] factors [noted in those cases] in the instant case might make a very close issue but for the wife's declaration at the time of payment that she intended to appeal. The fact that the payment was made in the face of a claim of right to appeal tips the scale in the instant case to permit the appeal.

*Id.* at 591[5].

Nothing in the record here indicates that when Sarah received the $17,373.52 (thereby completing the collection of all marital property awarded her), she declared her intent to claim on appeal that the trial court erred in not awarding more. Thus, the factor that tipped the scale in *Brisco* is absent here. Sarah's point IV is ineligible for review.

We next address point I, which concerns maintenance. On that subject, the evidence showed Rick's monthly gross income is $2,865; Sarah's is $789.

The maintenance order in the decree reads:

The Court awards [Sarah] as periodic maintenance ... $200 per month for 24 months, beginning December 1, 1991, payable on that date and on the same date of each month thereafter for 24 consecutive months, at which time said maintenance shall terminate. This Decree as it relates to maintenance shall not be subject to modification.

In point I, Sarah asserts the trial court erred in awarding only $200 per month, and should have awarded $650 per month.

It is noteworthy that the trial court, while awarding Rick primary physical custody of the parties' 16–year–old daughter, did not order Sarah to pay Rick child support. The decree addressed that matter as follows:

The Court has considered the child support guidelines in effect in the state of Missouri and has determined that [Sarah's] obligation to [Rick] for child support would be $111.76 per month. The Court finds, however, that the use of said guidelines in this circumstance would be unjust and inappropriate for the reason that [Sarah] does not have sufficient income to pay child support and at the same time see to her reasonable needs and expenses so as to pursue her desire for further education.

The "further education" referred to in the above passage was Sarah's avowed goal of attending college to become a recreational therapist.

■ The scope of our review of this judge-tried case is established by Rule 73.-01(c),[2] as construed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The decree of the trial court will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.* at 32[1]; *Mehra v. Mehra*, 819 S.W.2d 351, 353[1] (Mo. banc 1991). We view the evidence and permissible inferences therefrom in the light most favorable to

**2.** Rule references are to Missouri Rules of Civil Procedure (1992).

the decree, disregarding all contrary evidence and inferences, *id.* at 353[2], mindful that credibility of the witnesses and the weight to be given their testimony was a matter for the trial court, which was free to believe none, part or all of their testimony. *Herbert v. Harl,* 757 S.W.2d 585, 587[1] (Mo. banc 1988).

■ The trial court has broad discretion in determining the amount of maintenance, and an appellate court will not interfere absent an abuse of discretion. *Colabianchi v. Colabianchi,* 646 S.W.2d 61, 66[8] (Mo. banc 1983). Judicial discretion is abused when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable people can differ about the propriety of the action taken by the trial court, it cannot be said the trial court abused its discretion. *State ex rel. Webster v. Lehndorff Geneva, Inc.,* 744 S.W.2d 801, 804[1] (Mo. banc 1988).

■ Applying the controlling standards of review, we cannot convict the trial court of error in setting maintenance at $200 per month. Rick must support himself and Valerie from his own earnings, and in addition pay Sarah the decreed maintenance. Sarah is absolved of all financial responsibility regarding Valerie, an "A and B student" who plans to attend college. Sarah has only herself to support, and has her own earnings plus the maintenance award for that purpose.

The amount of maintenance set by the trial court is supported by substantial evidence and is not against the weight of the evidence. No error of law appears and an extended opinion regarding the amount of maintenance would have no precedential value. Accordingly, we deny point I and affirm the award of $200 per month maintenance in compliance with Rule 84.16(b).

We turn now to points II and III, and consider them together. Point II avers the trial court erred in limiting maintenance to 24 months; point III argues it was error to make the maintenance award nonmodifiable.

■ A decision to limit maintenance is justified only where substantial evidence exists of an impending change in the financial condition of the parties; at a minimum, there must be substantial evidence to support a reasonable expectation that such a change will occur. *Whitworth v. Whitworth,* 806 S.W.2d 145, 148 (Mo.App.1991); *May v. May,* 801 S.W.2d 728, 731 (Mo.App. 1990). Absent evidence that the financial prospects of the party receiving maintenance will improve in the future, no maintenance award for a limited duration should be entered; it should be of unlimited duration, the amount being subject to modification if such party's financial condition improves. *In re Marriage of Runez,* 666 S.W.2d 430, 433–34[11] (Mo.App.1983); *Poague v. Poague,* 579 S.W.2d 822, 824 (Mo.App.1979).

■ Here, the record displays no evidence that Sarah's financial prospects will be appreciably better December 1, 1993, than they were at time of trial. The only evidence of any improvement was that she expected an increase of 30 to 40 cents per hour in her wages a few weeks after trial. A 40-cent increase would raise her pay to $4.95 per hour. Even if she achieves her stated goal of becoming a recreational therapist, the uncontradicted evidence was that this will require five or six years.

It is inferable the trial court (a) expected Valerie to begin college in the fall of 1993, (b) realized if that occurred, Rick's expenses for Valerie would substantially rise, and (c) was optimistic that Sarah would advance in her employment and enjoy enhanced earnings. In imposing the 24-month limitation, the trial court may have had the salutary goal of sparing the parties the expense of modification litigation if those expectations eventuated.

However, such forecasts are too uncertain to constitute a reasonable expectation of substantial change in financial circumstances. We agree with Sarah that it was error to limit maintenance to 24 months.

We likewise agree it was error to make the maintenance award nonmodifiable.

While we find no guidance in the cases as to what circumstances justify a nonmodifiable maintenance award, we do find cases disapproving nonmodifiability. *Whitworth,* 806 S.W.2d at 149; *In re Marriage of Hall,* 801 S.W.2d 471, 474 (Mo.App.1990). Furthermore, in a case where the trial court failed to state whether the maintenance award was modifiable or nonmodifiable, the Western District of this Court held it should have been modifiable because of the uncertainty of future events. *Harris v. Harris,* 784 S.W.2d 630, 631 (Mo.App.1990). Similar uncertainty exists here. Consequently, we hold the maintenance award should be modifiable.

Sarah's final assignment of error is point V, which asserts the trial court erred in failing to award her any attorney fees.

 In an action for dissolution of marriage, the trial court has broad discretion in awarding or denying attorney fees, and its ruling will be disturbed on appeal only upon a showing of abuse of discretion. *Burden v. Burden,* 811 S.W.2d 818, 821[11] (Mo.App.1991); *In re Marriage of Gourley,* 811 S.W.2d 13, 22[13] (Mo.App.1991); *Podrecca v. Podrecca,* 794 S.W.2d 329, 332[5] (Mo.App.1990).

We find no abuse of discretion here, and we further determine that an extended discussion of the attorney fee issue would have no precedential value. We reject point V and affirm the denial of attorney fees. Rule 84.16(b)(1) and (5).

The amended decree of dissolution of marriage is affirmed in all respects except the provisions in the maintenance award limiting it to 24 months and making it nonmodifiable. The decree is reversed in those respects alone, and the cause is remanded to the trial court with directions to amend the maintenance award by deleting the 24-month limit and making the award modifiable. Costs of the record on appeal are taxed half against Sarah and half against Rick.

PARRISH, C.J., and SHRUM, J., concur.