**Herbert W. McINTOSH, Respondent,**

v.

**Tamara B. McINTOSH, Appellant.**

**No. WD 58052.**

Missouri Court of Appeals,
Western District.

Submitted Nov. 15, 2000.

Decided April 10, 2001.

E. John Edwards, III, Kansas City, MO, for Appellant.

James D. Boggs, Kansas City, MO, for Respondent.

Before SMART, P.J., ELLIS and LAURA DENVIR STITH,[1] JJ.

SMART, Presiding Judge.

This appeal of a dissolution decree involves issues of maintenance and attorney fees. Appellant is Tamara B. McIntosh ("Tamara") and the respondent is Herbert W. McIntosh ("Herbert"). Tamara contends on appeal in four different points that the court erred in refusing to grant her periodic maintenance. Tamara also contends in another point that the award of attorney fees to her in the amount of $5,000.00 was inadequate. Although a total of five points are raised, all relate to these two issues.

**Factual Background**

On February 14, 1981, the parties were married. On December 11, 1998, Herbert filed a petition for dissolution of marriage. The parties physically separated on February 6, 1999. The parties have two minor children. On July 20 and August 6, 1999, trial was held on the petition and counter-petition, with the court ruling on custody of the children, division of assets, child support, and claims by Tamara for maintenance and attorney's fees.

Herbert's occupation at the time of trial and many years previous was as an attorney in the private practice of law. Herbert's earnings for several years before trial averaged about $8,500.00 per month. Tamara's employment background included twenty-four years as a dance performer and instructor. Tamara earned a degree in dance from the University of Missouri, Kansas City. In 1976, Tamara co-founded a dance business with her mother. Tamara continued to work in that business for thirteen·years until 1989. The dance studio had seventeen employees, and approximately seven hundred students. Tamara was responsible for all of the bookwork, payroll and bill payment, class scheduling and student accounts.

Tamara earns some income providing dance lessons and demonstrations. Tamara speaks English, German and Spanish fluently. Tamara was a member of the Missouri Arts Council for five years until April 1999, where she reviewed grants applications and evaluated performances for possible state funding. She formerly taught dance at St. Mary's College in Leavenworth and has been on the adjunct faculty at UMKC.

About six months after the petition for dissolution had been filed, Tamara sought additional employment (outside of private lessons) in May or June of 1999. She took the first part-time job offered, a janitorial job paying approximately $9.00 per hour. In 1999, she earned approximately $1,450.00 per month.

After the separation, Herbert purchased a house across the street from the marital home. He also continued to pay family household expenses, including utilities, insurance expenses, orthodontics and cloth-

1. Judge Stith participated in the case at the time of submission as a member of the court and was specially assigned to remain on this case by order of the Supreme Court after her appointment to the Supreme Court.

ing. In addition, he voluntarily paid child support.

The trial court ordered joint legal and physical custody of the two children to the parties. The children alternate each week between the parent's homes during the school year. Herbert volunteered to pay, and was ordered to pay, $1,120 per month in child support, which is about $300.00 per month above the requirements of the Supreme Court guidelines. Herbert provides health and dental insurance and is obligated to pay 80% of expenses not covered by insurance. Herbert was ordered to pay 80% of the cost of college.

The trial court awarded Tamara the marital home, which was free of any liens, and other marital assets. The court awarded her a total net value of $388,825.57. This sum was 73% of net value of the marital property. Non-marital property of $9,351.00 was also set over to her. Tamara was ordered to pay marital debt of approximately $5,000.00, and Tamara is to pay all of her attorney's fees except for $5,000.00, which Herbert was ordered to pay in her behalf. Herbert was awarded marital property with a net value of $144,588.56 (27% of the net value of the marital property) and was ordered to pay debts of $562,129.91, which included the $201,000.00 debt on the new home he occupies.

Tamara testified that her reasonable needs were $5,158.00 per month. She was earning about $1,450.00 per month at the time of trial. She had no mortgage payment because the house was free and clear.

The trial court imputed income of $2,000.00 per month to Tamara stating:

Respondent is currently employed part-time at Cultural Kaleidoscope and Commercial Management Services and as a dance instructor and the Court finds that Respondent is under-employed for her qualifications, that Respondent has not actively sought full time employment or employment at a level commensurate with her education, experience and training, and that she is presently able to work on a full time basis and is capable of earning at least $2,000.00 per month.

The trial court also made specific findings of fact relating to spousal maintenance, stating:

The Respondent claims an entitlement to periodic and modifiable maintenance. With respect to the Respondent's claim for maintenance, this Court does find that she is not entitled to the same based upon marital misconduct and the fact that this Decree set aside to her sufficient property to provide for her reasonable needs. This Court does find that the Respondent is able to support herself through appropriate full-time employment in that she is currently under-employed for her qualifications and has not actively sought full-time employment or employment at a level commensurate with her education, experience and training. For this reason, this Court finds that the Petitioner is not entitled to periodic modifiable maintenance. This Court does, however, find that it is appropriate for the Petitioner to pay non-modifiable maintenance in the amount of $1,000.00 per month commencing on the 1st day of November, 1999 for a total period of twelve (12) months or the total payment of $12,000.00 in maintenance. Said maintenance shall terminate on the payment of $12,000.00 or upon the death of either party.

The court therefore ordered Tamara non-modifiable and terminable maintenance in the amount of $1,000.00 per month for twelve (12) months. The trial court also

awarded Tamara partial recovery of her attorney's fees in the amount of $5,000.00.

Both parties filed timely appeals. Subsequently, Herbert dismissed his cross-appeal. During the pendency of the appeal, Herbert paid, and Tamara accepted, the sum of $12,000.00 for maintenance as specified in the judgment. Payments were made in seven payments, beginning in November, 1999 and concluding in April, 2000.

### Motion To Dismiss

In both his Motion to Dismiss and in response to Tamara's first point relied upon, Herbert argues that Tamara's appeal should be dismissed as to the issue of maintenance because Tamara has accepted all $12,000.00 ordered for maintenance. Herbert argues that Tamara cannot accept the benefit of the judgment and appeal from the judgment at the same time. Tamara argues that the general rule pertaining to acquiescence in judgments is not strictly applied in divorce cases and should ·not be applied in this case.

■ The general rule with regard to acquiescence has been described as follows:

> [A] party may procedurally estop himself from taking an appeal by performing acts after the rendition of the order or judgment which are clearly inconsistent with the right of appeal, and the estoppel may consist of any voluntary act which expressly or impliedly recognizes the validity of the judgment.

*Schulte v. Schulte,* 949 S.W.2d 225, 226 (Mo.App.1997) *(quoting State ex rel. Royce–St. Louis Ltd. Partnership v. Kraiberg,* 864 S.W.2d 409, 411 (Mo.App.1993)). "The general rule is that one may not voluntarily accept the benefits of a judgment and afterwards prosecute an appeal to reverse it." *In re Marriage of Vinson,* 839 S.W.2d 38, 40 (Mo.App.1992). This is

because "[t]he right to enjoy the fruits of a judgment and the right to attack it on appeal are inconsistent, and an election to pursue one course is an abandonment of the other." *Id.*

Herbert contends that *Warren v. Warren,* 601· S.W.2d 683 (Mo.App.1980) is directly on point with the instant case. In *Warren,* the wife had sought periodic maintenance. "The trial court declined to award the wife periodic maintenance but did order that she be paid maintenance of $10,550.00 in monthly installments of $250.00." *Warren,* 601 S.W.2d at 685. The trial court also divided the marital property and awarded child support. *Id.* After the entry of the decree, the husband decided to sell the marital home, which had been awarded to him. In order to remove any cloud on title related to the fact that wife was appealing the judgment, husband asked wife to sign a quit claim deed. Wife agreed to sign the deed only if husband would pay in full the "maintenance in gross" and the attorneys' fee award. Husband did in fact pay the $10,550.00 and the attorney's fee award. *Id.* at 685. Wife executed an acknowledgement reading in part " * * *receipt for said full amount of gross maintenance * * * as would have been paid at the rate of $250.00 per month through September 23, 1982." *Id.* at 686.

On appeal, the wife in *Warren* contended that periodic maintenance should have been awarded by the trial court because the maintenance in gross was inadequate. She also contended the child support was inadequate. The husband contended wife had received payment in full of the maintenance awarded, and therefore should not be heard to challenge the award of maintenance. In holding that the issue of maintenance was no longer appealable, Judge Clark for this court wrote:

The fundamental reason why the issue of maintenance is no longer open in this case is because judgment was rendered on the wife's claim and the judgment is now satisfied. Although the wife continues to claim entitlement to periodic maintenance, as she has done throughout the case, at no time has she ever contended that both maintenance in gross and periodic maintenance should have been allowed. The award of maintenance pursuant to § 452.335, RSMo 1978 fully and finally determined the rights and liabilities of the parities on this aspect of the case and because maintenance was awarded in gross, it was not subject to modification. The wife has received full payment upon this adjudication of her support rights. Where the judgment debtor pays and the judgment creditor accepts the full amount of the judgment, it is thereby extinguished.

*Id.* at 686 (internal citations omitted).

The facts of *Warren* closely parallel the facts of this case. In each case the wife asked for, and continued to claim, entitlement to periodic modifiable maintenance. In neither case did the wife ask for *both* periodic maintenance and maintenance in some other form.[2] In this case the $12,000.00 paid constituted payment in full of the rehabilitative maintenance, just as the maintenance in gross in the *Warren* case. Wife in *Warren* acknowledged payment in full of the $10,550.00 as maintenance in gross, and in this case the final check included the endorsement "payment in full." Tamara here attempts to distinguish *Warren*, stating that the wife in *Warren* actively bargained for an acceleration of the payments. Tamara fails to

explain, however, how that fact provides a principled distinction, and it is not obvious to us that it provides a meaningful distinction at all.

Tamara points out that the "general rule pertaining to acquiescence in judgments should not be strictly applied in divorce cases...." *Citing Brisco v. Brisco,* 713 S.W.2d 586, 591 (Mo.App.1986); *Smith v. Smith,* 702 S.W.2d 505, 507 (Mo.App.1985); and *Hicks v. Hicks,* 859 S.W.2d 842, 845 (Mo.App.1993). We agree with that statement. Sometimes, however, courts make that statement when they mean that only a particular issue of the appeal (in which there was acquiescence) should be dismissed for acquiescence, rather than all points on appeal. *E.g. Smith,* 702 S.W.2d at 507; *Vinson,* 839 S.W.2d at 40. Nevertheless, there are exceptions to the rule of acquiescence:

"Included in the factors which have been considered in finding such an acceptance to be an exception to the general rule are the following: (1) the amount received was a small portion of the total judgment; (2) the amount accepted has effectively been conceded to be due by a husband who did not appeal; (3) the acceptance of the benefits was due to financial distress; (4) the absence of prejudice to the judgment debtor husband; and (5) where the only issue on appeal is whether an award will be increased."

*Hicks,* 859 S.W.2d at 845 (*citing Smith v. Smith,* 702 S.W.2d 505, 507 (Mo.App.1985) (citations omitted)).

In *Hicks* (wife barred from appealing portion of decree related to real estate and

2. It would seem unusual for a court to grant both periodic maintenance and rehabilitative maintenance. The term "maintenance in gross" should be interpreted only as referring to a method of property distribution and

should not be used when describing rehabilitative maintenance. *See Cates v. Cates,* 819 S.W.2d 731, 738 (Mo. banc 1991); *In re Marriage of Johnson,* 819 S.W.2d 391, 394 (Mo. App.1991).

life insurance policies because of acquiescence), and *In re Marriage of Vinson,* 839 S.W.2d 38 (Mo.App.1992) (wife foreclosed by acquiescence from seeking a change in property division), the court applied the rule of acquiescence as to the particular portion of the decree involved in the acquiescence, but allowed appeal as to other issues.

Tamara argues here that the rule should not be applied because she was motivated out of financial distress. We note that the property distribution part of the decree allocated to her approximately 73% of the marital assets, assigning her property with a net value of over $388,825.00. Tamara is correct that few of these assets are income producing. However, Tamara is left with very little debt. Nor does it appear that Tamara has no access to liquidity. For instance, she has a life insurance policy with a cash value of almost $30,000.00; an IRA worth over $60,000.00; and a home unencumbered by a mortgage. Her claim of financial duress does not, we believe, strongly militate in favor of avoiding the rule of acquiescence.

■ While *Warren* appears to be pertinent, and while the usual factors might indicate we should not entertain the appeal of the maintenance issues in the case, we believe that Tamara may have been confused as to whether to regard the "terminal and non-modifiable maintenance" award as an adjustment of marital property rather than as a form of maintenance.[3] Because of the possibility of confusion in this regard, the motion to dismiss is denied.

**Maintenance**

Tamara claims first of all that the court abused its discretion because the court based the denial of periodic maintenance largely on a finding of marital misconduct. She claims this is error because the evidence did not show misconduct. Further, she says, misconduct cannot be considered in determining maintenance unless there is a showing that the marital misconduct imposed an undue economic burden on the spouse. We disagree with both assertions.

■ Section 452.335 governs the award of maintenance. Section 452.335.1, provides the two-part "threshold test" for an award of maintenance. *Schroeder v. Schroeder,* 924 S.W.2d 22, 25 (Mo.App. 1996). It states that:

1. In a proceeding for ... dissolution of marriage ... the court may grant a maintenance order to either spouse, but only if it finds that the spouse seeking maintenance:

(1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

(2) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

Section 452.335.1. To proceed under the statute, the court must first determine the reasonable needs of the spouse seeking maintenance, *Brueggemann v. Brueggem-*

---

**3.** Although the trial court did not use the ambiguous term "maintenance in gross," the attorneys in this appeal have freely used that term as synonymous with terminable and non-modifiable maintenance. *See Cates,* 819 S.W.2d at 738. It makes sense, however, that when a court finds one spouse is capable of earning more than that spouse has been earning, and also awards non-modifiable and terminal maintenance, there is a reason to conclude that the award is rehabilitative maintenance rather than an adjustment of property, in the absence of factors suggesting otherwise.

*ann,* 551 S.W.2d 853, 856 (Mo.App.1977), and then determine whether the spouse is able to provide for these needs through use of property or appropriate employment. *Schroeder,* 924 S.W.2d at 25.

■ Once the court determines the reasonable needs of the spouse seeking maintenance, the court then determines the ability of that spouse to meet those needs through her earnings and investment income, adding to that the amount of child support received. If there is a disparity between her reasonable needs and her income, the court should consider that disparity in deciding whether maintenance is required. *Hosack v. Hosack,* 973 S.W.2d 863, 870 (Mo.App.1998).

When the threshold test for eligibility has been met under § 452.335.1, the court then considers the nonexclusive list of factors set forth in § 452.335.2, and *all* relevant factors, in making the final resolution of the appropriateness of maintenance, the amount, and the duration of any award of maintenance. Included among those factors, of course, is that of "the conduct of the parties during the marriage." The court employs these and other pertinent factors in determining how to balance the reasonable needs of the spouse seeking maintenance with the ability of the other spouse to pay. *Schroeder,* 924 S.W.2d at 26. There is no formula as to the comparative weight to be given the relevant factors which the court may consider. *Nelson v. Nelson,* 25 S.W.3d 511, 519 (Mo. App.2000).

### Consideration of Misconduct

Tamara's argument that the record does not show misconduct assumes a very limited definition of misconduct. Thus, by defining misconduct narrowly, Tamara mischaracterizes the nature of marriage and the legislative intent embodied in Section 452.335. The record establishes that Ta-mara burdened the marriage by maintaining questionable relationships with various men, and by engaging in numerous inappropriate activities that created a suspicion of infidelity. These relationships and actions were without Herbert's consent and often without his knowledge. Even if we assume there was no actual sexual misconduct (and Tamara does maintain her relationships were not of a sexual nature), there was in fact abundant evidence that Tamara lied to her husband on several occasions about her activities with other men, including out-of-town trips with men friends and trips to visit men friends residing in other places. There was evidence that Tamara had occasionally stayed out with other men until 4:00 or 5:00 a.m., had allowed men into the family home while Herbert was away, and had on one occasion shared a hotel room with a man who chauffeured her on a trip to Arkansas and St. Louis (although she represented to Herbert that the two had separate rooms). Because there is no indication in the record that Herbert had a similar casual view of the nature of their relationship, it hardly seems necessary to say that these actions were destructive to the marital relationship. The trial judge could reasonably have concluded from the evidence that this pattern of conduct was a huge burden on the relationship, and was the primary factor in destroying it.

■ Tamara argues that her actions, even if they could be considered misconduct, should not be considered, because there is no indication that her actions cost him additional money or interfered with his work. Tamara fails to understand that when a spouse engages in conduct that burdens the marital relationship, it is more significant than a matter of economics. Burdens on the relationship cause considerable stress and disappointment to the other party, not to mention the stress and

insecurity often caused any children of the marriage, which in turn causes additional stress on the marriage partners. The purpose of considering misconduct is not to punish the party guilty of misconduct, *Nelson*, 25 S.W.3d at 519; rather, it is to attempt to be realistic and just in issues of property and maintenance by recognizing that significant misconduct, of whatever kind, negatively affects the marital relationship and places burdens, even if not economic burdens, on the other party to the relationship. *Id.; In re Marriage of Galloway*, 547 S.W.2d 193 (Mo.App.1977) (reversal of trial court refusal to consider husband's physical assault on wife causing permanent injury, remanding for consideration of misconduct in connection with maintenance and property division).

Tamara cites *Dodson v. Dodson*, 904 S.W.2d 3, 8 (Mo.App.1995) for the concept that it is only misconduct which "upsets the balance in a marriage which requires that each spouse contribute equally" which should be considered in the division of property. *Dodson* was quoting *Burtscher v. Burtscher*, 563 S.W.2d 526, 528 (Mo.App. 1978), which involved one extramarital affair at the time of separation or after the parties had already separated at the end of a twenty-four-year marriage. The other spouse (the wife) in that case also had done the marriage no favors, pursuing an obsession with bingo four nights a week until 11:30 p.m., while the husband was at home, and over his protests. The court found no abuse of discretion in the trial court's refusal to put great weight on the husband's act of misconduct. *Id. Burtscher* should not be interpreted as forbidding courts to exercise their discretion to consider misconduct when that misconduct has significantly burdened or destroyed the marriage.

In a few states, statutes forbid consideration of misconduct in connection with maintenance awards, "no matter how extreme the circumstances may be." 24 AM JUR 2D Divorce and Separation, § 643. In most states, however, no-fault divorce statutes have made little change in regard to the award of alimony, attorney fees, and costs. *Id.* at § 523. In Missouri, maintenance, unlike alimony under the former act, is related only to the need for reasonable support and is not an assessment of damages for breach of the obligation of support arising out of the marriage contract. *Cates v. Cates*, 819 S.W.2d 731, 734 (Mo. banc 1991). The purpose of maintenance is only to provide support until the dependent spouse "achieves a reasonable self-sufficiency." *Id.* Nevertheless, the maintenance statute allows fault to be considered among other factors in that it allows "conduct" of the parties to be considered. Section 452.335.2. The result of the blend of these principles is that while the purpose of maintenance is to attempt to provide reasonable support in view of the applicable circumstances, one of the factors the court may consider in its discretion, within the parameters of reasonable support, is the relevant conduct of the parties.

There is no language in § 452.335.2 about limiting consideration of misconduct to that which involves an economic burden. Like all the other factors listed in § 452.335.2, the misconduct must be relevant to the breakdown of the marriage or to the allocation of the property, but it need not involve economic burdens. *See Nelson*, 25 S.W.3d at 518–519 (court could consider evidence of infidelity). In *McNair v. McNair*, 987 S.W.2d 4 (Mo. App.1998), both parties seemed to have accepted the misguided notion that consideration of marital misconduct in connection with the division of marital property required that such misconduct involve a financial burden. In that case, while ruling

that even under the parties' agreed standard, the trial court properly considered the misconduct, Judge Ulrich, writing for this court, stated that the law was "not so restricted." *Id.* at 7. Judge Ulrich went on, in a footnote, to cite seven cases suggesting that the courts will consider relevant misconduct in dividing property, even when the misconduct involves no economic burden or only an incidental economic burden. *Id.*

Both § 452.330 and § 452.335, in mentioning the court should consider "all *relevant* factors," suggest that any misconduct considered must be relevant to the relationship in some fashion, whether economic or non-economic. Although economic burdens are properly considered, it is simply incorrect, in spite of any obiter dictum to the contrary, to say that the court cannot consider significant misconduct affecting the relationship unless the offending actions involve an economic burden. *McNair,* 987 S.W.2d at 7. To reach any other conclusion is to unduly limit the factors the trial court may consider without possessing the statutory mandate for such a limitation. *In re Marriage of Schulte,* 546 S.W.2d 41, 48 (Mo.App.1977).

 The court in this case was entitled to consider Tamara's misconduct, whether or not it caused an economic burden. The fact that the trial court specifically mentioned misconduct, but did not discuss all of the statutorily listed factors, creates no inference that the other factors were *not appropriately considered; nor* does it mean that the court gave more weight to the misconduct than to any other relevant factor. *Van Natter v. Van Natter,* 988 S.W.2d 110, 114 (Mo.App.1999). Because of the fact that misconduct is not a factor in all cases, courts will sometimes inform both the parties and the reviewing court that misconduct was a factor in its determination where it is not otherwise

obvious. Here, given the overall picture of the division of property, the allocation of marital debt, and all other aspects of the decree, we cannot say the trial court did not consider all the appropriate factors in its determination. Moreover, the allocation of the property, the indebtedness, and the future expenses for the children undermines Tamara's assertion that the court placed "great weight" on the misconduct in its rulings.

### Reasonable Needs

 Tamara also contends that the court erred in finding that the decree set aside to Tamara sufficient property to provide for her reasonable needs when combined with her earning power. Tamara says that she proved reasonable expenses of $5,158.00 per month and proved that her employment earnings do not come close to that figure. Tamara fails to recognize that the trial court was not required to accept as true Tamara's assertion that her reasonable expenses would amount to $5,158.00 per month, especially when Tamara had no unusual medical needs, no mortgage or rental payments, and had a 1998 vehicle that was mostly paid for. Apart from her attorney's fees for the divorce, Tamara faced only about $5,000.00 of debt, most of which was a lien against the vehicle, and she received an award from the court of $5,000.00 for her attorney's fees. The court also awarded her $12,000.00 of rehabilitative maintenance to give her some time to better actualize her considerable talents before her earnings reached their potential.

The figure of $5,158.00 was taken from Tamara's statement of income and expenses, which Tamara had derived from Herbert's 1998 records. The figures included expenses for the children (and per-

haps for Herbert as well).[4] Tamara is correct that the court must first determine the reasonable needs of the party seeking maintenance because that is the first step in addressing the issue of maintenance. *Brueggemann*, 551 S.W.2d at 856; *Hosack*, 973 S.W.2d at 870. However, no specific findings were requested in this case; accordingly, the court was not required to specify a particular finding as to Tamara's reasonable needs. We agree that the evidence is susceptible to various interpretations; however, the mind of the court is not a blank slate as for the typical expenses of living in society. There was also evidence that Tamara was not extraordinarily frugal, having spent, for instance, $1,500.00 for massages and $1,450.00 for facials in the last eighteen months of the marriage at a time when she knew the couple was short of money and she "wanted to make the finances right." The court could reasonably have concluded from the evidence that Tamara's reasonable needs were about $3,000.00 per month. The court presumably also considered in connection with maintenance the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance. § 452.335.2(8). In this case, we note that while Herbert earns substantially more income, Herbert also faces debt of over $562,000.00. Accordingly, we do not discern that the court erred in its determination of reasonable needs, or abused its discretion in the determination as to maintenance generally.

4. The parties disputed at trial whether the figures included expenses for Herbert also. It is not clear what the trial court determined in this regard. The parties did not ask for specific findings and conclusions.

5. The former standard of living in a marriage of substantial duration is one of the factors to be considered. *§ 452.335.2.* Of course, that

## Imputed Earnings

■ Tamara further contends that the court erred in attributing to her an ability to earn at least $2,000.00 per month. Despite evidence indicating that Tamara is a person of exceptional talent in the field of dance, and a person with substantial dance-related business background, Tamara points out that the hard evidence was that she had earned only $1,450.00 per month during 1999 with part-time endeavors. Tamara downplays her experience not only in dancing but in the thirteen-year operation of a large dance business, including hiring, firing, scheduling, meeting payroll, and so forth. It was not unreasonable for the court to have believed that she could move rather quickly from her current underemployment to a position providing at least $12.00 per hour. Her business and her dance background should allow her to move to a full-time position, either within or without the dancing community, which would compensate her for her organizational skills, interpersonal skills, and business experience. As we have already noted, the court may have believed that if Tamara earns at least $2,000.00 per month, receives $1,120.00 in child support and has the children approximately one-half of the time, and has no mortgage payment, her reasonable needs would be provided, even if she is not able to enjoy all the benefits of her former standard of living.[5] We see no error in the trial court's determination that Tamara is able to earn at least $2,000.00 per month through full-time employment.

does not mean that, when all of the factors are considered, the spouse seeking maintenance is necessarily entitled to maintain the former standard of living. Maintenance is to help provide for the dependent spouse while that spouse moves toward "a reasonable self-sufficiency." *Nelson v. Nelson*, 720 S.W.2d 947, 952 (Mo.App.1986).

## Limitation of Maintenance

 Tamara also contends that the court erred in limiting the maintenance to twelve months because no substantial evidence supported a reasonable expectation that the parties' circumstances would be different at the end of that twelve-month period. It is generally true that a decision to limit maintenance must be based on evidence of a reasonable expectation of an impending change in the financial condition of the parties. *Allen v. Allen*, 961 S.W.2d 891, 896 (Mo.App.1998). There is a judicial preference for awards of maintenance of unlimited duration. *Test v. Test*, 872 S.W.2d 620, 623 (Mo.App.1994). There must be some evidence that the original maintenance award will no longer be required in the future. *Tillock v. Tillock*, 877 S.W.2d 161, 162–163 (Mo.App. 1994). However, it is not unreasonable for a trial court, having found that a party is capable of earning more than they are earning at the time of the dissolution, to allow a period of time with some financial cushion while that party moves toward their earning potential. *Id.* A one-year period of rehabilitative maintenance in which to move substantially toward that earning potential is not necessarily unreasonable. *Id.; see Bold v. Bold*, 912 S.W.2d 477, 481 (Mo. banc 1995); *Sansone v. Sansone*, 615 S.W.2d 670 (Mo.App.1981). We hold that the trial court did not abuse its discretion in limiting the award of maintenance to twelve months.

## Prospectivity

 Tamara also contends that the court abused its discretion in deciding to wait until the decree was handed down to begin the maintenance, rather than making it retroactive to the date that Tamara filed a motion for temporary maintenance. Tamara had filed a motion for temporary maintenance in May 1999, which was never called up for hearing prior to the dissolution. The trial court, of course, had discretion to enter a retroactive award of periodic maintenance to the time when the motion was filed. *Stewart v. Stewart*, 866 S.W.2d 154, 158 (Mo.App.1993). However, we cannot say it was an abuse of discretion not to do so in this case, particularly when the trial court found Tamara was not entitled to periodic maintenance.

## Attorneys' Fees

 Finally, Tamara contends that the court abused its discretion in allowing Tamara only $5,000.00 for her attorney's fees, pointing to the fact that the judge referred to himself as a "country judge" and stated that he tended to be conservative and thereby tended to "low-ball" requests for attorney's fees. We would note, however, that in spite of the court's reference to his conservative ways as a country judge, the court did not necessarily apply a "country standard" to this case. Rather, it would be reasonable to conclude that the trial judge's remark was an attempt to make the point that he is not generally inclined to order one party to pay the full freight of $250.00 per hour for the other party's attorney's fees. The trial court had the opportunity to observe the performance and the efforts of counsel. There were motions filed by Tamara's attorney which were later abandoned. There were some discovery disputes which the court could have viewed as mostly attributable to Tamara's unreasonableness. While Tamara's trial attorney is an able attorney, the trial court "is not bound either by the number of hours performed ... or the hourly charge." *Roberts v. Roberts*, 652 S.W.2d 325, 331 (Mo.App.1983). The trial court is an expert in attorney's fees and has great discretion in the award of attorney's fees. *Tracy v. Tracy*, 961 S.W.2d 855, 865 (Mo.App.1998). The court was entitled to consider the conduct of the

parties during the marriage. *Halupa v. Halupa,* 943 S.W.2d 272, 278–279 (Mo.App. 1997). The court was also entitled to consider the conduct of the parties during the litigation and the extent to which the conduct of one spouse required the other spouse to expend funds or attorney's fees. *Runyan v. Runyan,* 907 S.W.2d 267, 273 (Mo.App.1995); *Taylor v. Taylor,* 12 S.W.3d 340, 348 (Mo.App.2000) (holding that it was not an abuse of discretion for the court to deny an award of attorney's fees to the wife). The court was also entitled to consider the fact that Tamara was awarded 73% of the net assets of the marital estate and that she was not without some ability to pay fees. The court was also entitled to consider that Herbert is already having to deal with a debt burden of $562,000.00, as well as his own attorney's fees, and is paying child support in an amount which is almost four hundred dollars per month beyond the presumed support amount.

A party challenging an award of fees must demonstrate that the award was clearly against the logic of the circumstances and so arbitrary or unreasonable as to shock one's sense of justice. *In re the Marriage of Chorum,* 959 S.W.2d 900, 907 (Mo.App.1997). We are more concerned with the action the trial court actually took in light of the evidence and circumstances than we are with any off-the-cuff comments of the court about being a "country judge" and tending to "low ball" attorneys' fees. These are not comments which show bias or prejudice against a particular party. Nor can we say that, based on this record, the court's ruling appears to be contrary to reason. We cannot say the award of attorney's fees was so clearly against the logic of the circumstances and so arbitrary or unreasonable as to shock our sense of justice.

**Conclusion**

The judgment of the trial court is affirmed.

ELLIS, J. and LAURA DENVIR STITH, Sp.J., concur.