# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1728-20

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

J.E.M.,

      Defendant-Appellant,

and

A.P., Sr.,

      Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF A.C.P.
and J.C-A.P., minors.

_____

Submitted October 26, 2021 – Decided November 16, 2021

Before Judges Fisher, Currier and Smith.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Atlantic County, Docket No. FG-01-0032-20.

Joseph E. Krakora, Public Defender, attorney for appellant (Bruce P. Lee, Designated Counsel, on the briefs).

Andrew J. Bruck, Acting Attorney General, attorney for respondent (Sookie Bae-Park, Assistant Attorney General, of counsel; Jessica A. Prentice, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Nancy P. Fratz, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Defendant J.E.M. appeals a judgment that terminated her parental rights to two children: A.C.P. (born in 2012), and J.C-A.P. (born in 2017).[1] We affirm, finding no merit in her arguments about: the right of the Division of Child Protection and Permanency to seek termination; the sufficiency of the evidence; and the claimed appearance of impropriety arising from the judge's incorporation in her findings of a verbatim recitation of the Division's allegations.

In considering such an appeal, we must remain mindful that parents have a constitutionally protected right to the care, custody, and control of their

---

[1] The children's father entered into a voluntary surrender of his parental rights.

children. Santosky v. Kramer, 455 U.S. 745, 753 (1982); In re Guardianship of K.H.O., 161 N.J. 337, 346 (1999). "The rights to conceive and to raise one's children have been deemed 'essential,' 'basic civil rights . . .,' [that are] 'far more precious . . . than property rights.'" Stanley v. Illinois, 405 U.S. 645, 651 (1972) (citations omitted). "[T]he preservation and strengthening of family life is a matter of public concern as being in the interests of the general welfare." N.J.S.A. 30:4C-1(a); see also K.H.O., 161 N.J. at 347.

But we must also be mindful that the constitutional right to the parental relationship is not absolute. N.J. Div. of Youth & Fam. Servs. v. R.G., 217 N.J. 527, 553 (2014); N.J. Div. of Youth & Fam. Servs. v. A.W., 103 N.J. 591, 599 (1986). At times, a parent's interest must yield to the State's obligation to protect children from harm. N.J. Div. of Youth & Fam. Servs. v. G.M., 198 N.J. 382, 397 (2009); In re Guardianship of J.C., 129 N.J. 1, 10 (1992). To effectuate these concerns, the Legislature created a test for determining when a parent's rights should be terminated in a child's best interests. N.J.S.A. 30:4C-15.1(a) requires that the Division prove the following four prongs:

> (1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the

delay of permanent placement will add to the harm . . .;

(3) The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and

(4) Termination of parental rights will not do more harm than good.

See also A.W., 103 N.J. at 604-11.

In appealing, defendant argues: (1) the Division's decision to pursue termination of her parental rights "was arbitrary and capricious and resulted in no net benefit to the children," and that the Division lacked standing to pursue termination "because the children were never physically removed from their home and . . . were safely in the care of the[ir] paternal grandparents"; (2) the trial judge's decision exhibits an "appearance of impropriety" because she "cut-and-pasted [the Division's] complaint into [her] opinion," and because of "the lack of independent factual findings supported by particularized evidence"; and (3) the judge's findings on the first and fourth prongs of the statutory test were not supported by substantial, credible evidence. We find insufficient merit in these arguments to warrant further discussion in a written opinion, R. 2:11-3(e)(1)(E), adding only the following comments.

I

To put in perspective defendant's challenges to the reasonableness of the Division's decision to pursue termination and its standing to seek that relief, we briefly recount the circumstances that led to this Title Thirty action.

In a prior Title Nine action, the Division was granted care and supervision of the children in May 2018. By October of that year, all supervisory restraints on defendant were lifted and the Division retained only administrative oversight while defendant was ordered to complete a substance abuse program and undergo random drug screening. When drug screening produced positive results in early 2019, a new Title Nine action was commenced, and the Division was again granted custody of the children; defendant also stipulated to being in need of services. In February 2020, when defendant remained unable to remediate her substance abuse problem, as revealed by her failure to submit to drug screening and her continued drug use, she also lacked stable housing, had been incarcerated, and had only had minimal visits with the children in the preceding months. In light of this, the judge approved the Division's permanency plan of termination.

Not once during these proceedings did defendant argue either a procedural or substantive impediment to the Division's right to pursue the termination of her parental rights. Only now on appeal, for the first time, does

defendant challenge the decision to pursue termination or claim the Division lacks standing.

Even if we were to conclude these arguments were not waived once the trial court proceedings were completed – as they were, see N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 445 (2012) (holding that "[i]f there is to be a challenge to [the Division's] very right to proceed with a termination-of-parental-rights hearing, it must come before the hearing") – we find the arguments are without merit. Every order entered in the second Title Nine action and in this action states or recognizes that the children were in the Division's care and custody even if they were physically residing with their paternal grandparents. The concept of standing – particularly when the interests of children are involved – is broad enough to allow for the Division's commencement and pursuit of this Title Thirty action in that circumstance. The children were fortunate to have this resource; the presence of the happy circumstance of grandparents willing and able to care for these children cannot and should not form a ground upon which the action – after so much time and effort – could be undone.

We thus reject defendant's arguments that the Division lacked standing or that it arbitrarily pursued termination not only because defendant failed to make these arguments in the trial court but because the arguments lack merit.

A-1728-20

II

Defendant claims an appearance of impropriety in the judge's expression of her findings. In support, defendant correctly argues that the first forty pages of the judge's sixty-seven-page written opinion recites, with only a handful of minor alterations, almost all the 160 paragraphs of the Division's thirty-two-page complaint.[2] To be sure, the judge's verbatim inclusion of the Division's pleading in describing the factual and procedural events on which the complaint was based is disconcerting. We have said that a judge may not simply state an agreement with a party's "summation of the evidence" in lieu of the findings of fact required and still withstand judicial scrutiny on appeal. See Esposito v. Esposito, 158 N.J. Super. 285, 291 (App. Div. 1978). Parties are entitled to the judge's own independent view of the evidence and not the judge's mere referral to and acceptance of a party's arguments or allegations.

Having said that, we nevertheless conclude the judge did make independent findings entitled to our deference that eliminate any concern arising from the judge's verbatim repetition of the Division's allegations. After

---

[2]  We assume the judge was not channeling the fictional Pierre Menard. See Jorge Luis Borges, Pierre Menard, Author of the Quixote (1939) (describing how Menard – desirous of producing a twentieth century version of Don Quixote – recreated versions of its ninth and thirty-eighth chapters that were far "more subtle" and "almost infinitely richer" than Cervantes' novel, even though the chapters were identical).

reciting the operative facts that underlie the Division's claim that defendant's parental rights ought to be terminated – albeit in the Division's own words – the balance of the judge's written opinion describes in her own words her credibility findings, the legal principles that govern the action, and her own thorough and specific findings as to each of the statutory prongs. While it is regrettable the judge also repeated the Division's complaint as if its allegations were her findings, we are satisfied that even when ignoring that portion of the opinion, the judge thereafter presented a thorough and independent description of her view of the evidence that fully supports the judgment under review and is deserving of our deference.

For these reasons, we reject defendant's argument that we should grant a new trial.

### III

We also find no merit in defendant's arguments that the record lacked sufficient evidence from which the judge could conclude the first and fourth statutory prongs favored termination.[3] As for the first, the judge explained that defendant had proven time and again an inability or unwillingness to overcome her substance abuse problem and had been dishonest about her efforts – a

---

[3] In considering these arguments and in concluding that we must defer to the judge's view of the evidence, we allude only to those parts of the judge's opinion that are not repetitious of the Division's complaint.

circumstance that, in the judge's words, "impedes her from establishing a true path to sobriety, which is a necessity to providing for her children's safety, health, and development."

In her chief merits brief, defendant's argument seems limited to or focused only on what she refers to as the Division's "fail[ure] to enter into evidence its [safety protection plan]," rendering it "unclear what harm [defendant's] addiction posed." The evidence in the record, however, reveals and overwhelmingly demonstrates defendant's substance abuse issues and her resulting failure to properly parent the children.

In her reply brief, defendant also seems to suggest the substantial evidence presented by the Division to support prong one is somehow ameliorated by the fact that oxycodone was one of the substances to which she was addicted, referring to statistics about the extent to which individuals in this country have become addicted to opioids. That others may have fallen victim to the influence of the same substance or substances that have plagued defendant is of no help to her position. The record contained substantial evidence from which the judge could find – even through application of the clear and convincing standard – that the first prong was met because defendant found herself unable or unwilling to overcome an addiction that precluded her from properly caring for her children.

Defendant lastly contends the Division did not prove by clear and convincing evidence the fourth prong because the judge's finding of an "insecure attachment" between parent and child should only apply when that consequence arises from sexual abuse or greater neglect than she believes was shown here. There is no authority to support that limited view. The judge was entitled to rely on the Division's expert's opinion, which she found credible, that the children have an "ambivalent and insecure attachment" to defendant. Indeed, the judge found not only defendant's attenuated relationship to the children but that whatever limited relationship remained now paled in comparison to the children's "significant and positive bonds" to their paternal grandparents. Considering that and the finding that the children would be at significant risk of enduring harm if their relationships to their grandparents were to be terminated, the judge was entitled to conclude that termination would not do more harm than good.

We find all defendant's other arguments to be of insufficient merit to warrant further discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1728-20